## Richmond

### GILBERT R. KNOWLTON, ZONING ADMINISTRATOR OF FAIRFAX COUNTY

### v.

### BROWNING-FERRIS INDUSTRIES OF VIRGINIA, INC., d/b/a BIG K TRASH SERVICE, RAYMOND H. ZELL, JR., EVA J. ZELL, THOMAS A. GERMAINE AND SAMUEL ZIFF

November 21, 1979.

Record No. 780109.

Present: All the Justices.

*David T. Stitt, Assistant County Attorney (Frederic Lee Ruck, County Attorney; Robert F. Flinn, Assistant County Attorney,* on briefs), for appellant.

*Dexter S. Odin; Terrance Ney (E. A. Prichard; Carson Lee Fifer, Jr.; Robert K. Richardson; John B. Connor; Boothe, Prichard & Dudley; Odin, Feldman & Pittleman, P.C.,* on briefs), for appellees.

No brief or argument for Thomas A. Germaine or Samuel Ziff.

POFF, J., delivered the opinion of the Court.

The Zoning Administrator of Fairfax County (hereinafter, the County), complainant below, appeals from a decree refusing to enjoin the operation of a trash collection enterprise on a 6.035-acre parcel of land in a single-family residential zone (RE-1). We believe the chancellor erred in holding that defendants were maintaining a lawful nonconforming use,[1] and we reverse.

---

[1] A nonconforming use has been defined as " 'a lawful use existing on the effective date of the zoning restriction and continuing since that time in non-conformance to the ordinance.' " *C. & C. Incorporated* v. *Semple,* 207 Va. 438, 439 n. 1, 150 S.E.2d 536, 537 n. 1 (1966), quoting 2 E. Yokley, Zoning Law and Practice § 16-2, at 212 (3d ed. 1965). To denote a use so defined, we will hereinafter qualify the term

The essential facts are undisputed. The land, which has been zoned RE-1 since 1959, is owned by Raymond H. Zell, Jr., and his wife, Eva J. Zell. Browning-Ferris Industries of Virginia, Inc., doing business as Big K Trash Service (hereinafter, BFI), leases the premises. The Zells help manage BFI's trash collection enterprise, and Mr. Zell is a stockholder, officer, and director of BFI.

When Fairfax County was initially zoned in 1941, the subject parcel was part of a 50-acre tract lying in a larger farm owned by Mrs. Zell's father, William Germaine. There were no substantial improvements on the subject parcel, which was devoted mainly to raising hogs. The hogs fed on garbage that Germaine and Zell collected and dumped on the open ground. Germaine had a flatbed truck and a pickup, and garbage was but one of several types of cargo. Much of the trucking was incidental to the operation of the farm, but some hauling was done for hire. Around 1940, Zell and his brother joined Germaine to form a general trucking business. Germaine's trucks and two of Zell's flatbeds were often parked and maintained on the open land.

This parcel was severed from the larger tract when conveyed to the Zells in 1945. The Zells erected a house and barn and, in cooperation with Germaine, continued to raise hogs. Zell continued to use four trucks for trash collection and other hauling until 1962. Then he stopped raising hogs and turned to refuse collection full-time. Explaining the growth of this endeavor, Zell testified, "I think it just accelerated over night and over night, I had to buy more trucks." As his truck fleet increased, he built a metal building to house supplies and a 1600-square foot truck barn and installed two, 2000-gallon gasoline tanks underground. Zell sold his business to BFI in 1972. At the time of trial, the subject parcel had become the operational center of a business utilizing 18 large garbage trucks and employing 43 persons, eight of whom worked full-time on the premises. When not in use, the trucks were parked on the site, and all vehicular maintenance was performed there.

Alleging that the operation of a trash collection enterprise and the parking of more than one commercial vehicle on the property violated the zoning code, the County filed a bill of complaint against the Zells, BFI, and two of BFI's employees[2] and prayed for an injunction

"nonconforming use" with the adjectives "lawful" or "protected" in order to distinguish that use from a nonconforming use which, since the imposition of the zoning restriction, has been discontinued or modified in a way the law does not permit.

[2] The two employees are Thomas Germaine, who never responded to the bill of

permanently restraining the alleged violations. The primary defense was that the business was a lawful nonconforming use. By final order entered October 24, 1977, the court found "that the Defendants have established. . .that a general trucking business was establshed on the property. . .as a legal nonconforming use and that this use has continued without interruption to the present time without any changes other than normal growth and business transitions".

■ The first question we consider is procedural. When a locality seeks to enjoin a land use as violative of a zoning ordinance, which party has the burden of proving whether the use is a lawful nonconforming use?

Before trial, the chancellor ruled that the County had the burden of proving that defendants' current use was not a lawful nonconforming use. In his final decree, he made a finding that defendants had established the converse. The County challenges the ruling. Defendants support the ruling; alternatively, they argue that any error in the ruling was rendered harmless by the finding in the final decree.

We find no inconsistency between the ruling and the finding. Courts draw a distinction between the burden of producing (or going forward with) evidence and the burden of persuading the factfinder. The chancellor's pre-trial ruling placed both burdens upon the County, and his post-trial finding was a conclusion that defendants' evidence preponderated and consequently that the County had failed to carry its burden of persuasion. We believe the chancellor erred.

A zoning authority prosecuting a zoning violation as a criminal offense may have the burden of proving that the defendant's use is not a lawful nonconforming use. *State* v. *Pierce,* 164 Ohio St. 482, 132 N.E.2d 102 (1956). But in civil cases the majority rule, with which we agree, is that the land user has both the burden of initially producing evidence tending to prove a lawful nonconforming use and the burden of persuading the factfinder. 1 R. Anderson, American Law of Zoning § 6.09 (2d ed. 1976); 3 A. Rathkopf, The Law of Zoning and Planning 58-3 (4th ed. Supp. 1979). We hold that when a locality seeking to enjoin a nonconforming use has produced evidence to show the uses permitted in the zoning district in which the defendant's land is located and that defendant's use of his land is not a permitted use, the burden is on the defendant to produce evidence showing that his use is a lawful nonconforming use. The reason the defendant must bear this burden is that, ordinarily, the land user knows more than the zoning authority about the nature and extent of the use of the land since im-

complaint, and Samuel Ziff, who was dismissed from the suit at trial. Assigning no error to this dismissal, the County has incorrectly named Ziff an appellee.

position of a zoning restriction and thus has better access to evidence of whether the current use is a lawful nonconforming use. Moreover, because a person claiming an exemption from the law must establish his right to the exemption, the risk of non-persuasion in cases like the one at bar rests with the land user claiming the right to continue a nonconforming use.

■ We consider now whether defendants' evidence was sufficient to support the chancellor's finding that the current use is a lawful nonconforming use.

When the applicable ordinance took effect in 1959,[3] defendants used the land to conduct a hog raising operation and a general trucking business. We must first determine whether either use employed on the effective date of the County's zoning ordinance was a nonconforming use protected as a vested right under Code § 15.1-492[4] against impairment by zoning restrictions. Defendants' land was zoned RE-1. Among the uses permitted in that zone were "[a]ll agricultural uses." Zell testified that he continued the hog raising operation and the general trucking business until he converted to the specialized trash collection enterprise in 1962. Hence, one of the uses employed in 1959, the hog raising operation, was a use permitted by the 1959 ordinance, while the other, the general trucking business, was a nonconforming use protected by the statute. It is true that trash collection, part of the general trucking business, was related to the hog raising operation permitted by the ordinance. But a use accessory or incidental to a permitted use "cannot be made the basis for a nonconforming prin-

---

[3] Much of the argument here and below assumed that the March 1, 1941 ordinance that zoned the property agricultural was applicable. Since the zoning restriction allegedly violated was the one which took effect in 1959, any prior zoning would be relevant only to show whether the use employed in 1959 was legal and, as such, eligible for protection as a nonconforming use. *See C. & C. Incorporated* v. *Semple, supra,* 207 Va. at 439 n. 1, 150 S.E.2d at 537 n. 1. The parties agree that defendants' use in 1959 was legal, and we need not decide whether, as the Zells argue, the County's evidence was insufficient to prove the 1941 zoning.

[4] "§ 15.1-492. **Vested rights not impaired; nonconforming uses.**—Nothing in this article shall be construed to authorize the impairment of any vested right, except that a zoning ordinance may provide that land, buildings, and structures and the uses thereof which do not conform to the zoning prescribed for the district in which they are situated may be continued only so long as the existing or a more restricted use continues and such use is not discontinued for more than two years, and so long as the buildings or structures are maintained in their then structural condition; and that the uses of such buildings or structures shall conform to such regulations whenever they are enlarged, extended, reconstructed or structurally altered and may further provide that no 'nonconforming' building or structure may be moved on the same lot or to any other lot which is not properly zoned to permit such 'nonconforming' use."

cipal use." 1 R. Anderson, *supra* § 6.30 and cases cited therein; *see also* 3 A. Rathkopf, *supra* at 58-22 (4th ed. 1960). Consequently, in order to establish the current trash collection enterprise as a protected nonconforming use, defendants must rely not upon trash collection merely incidental to hog raising but upon the general trucking business.

■ Code § 15.1-492 authorizes localities to adopt zoning ordinances which provide that a nonconforming use will be protected "so long as the then existing or a more restricted use continues and such use is not discontinued for more than two years". Except for a change from a nonconforming use to a "more restricted use", the statute clearly envisions the protection of *the use* " 'existing on the effective date of the zoning restriction' ". *C. & C. Incorporated* v. *Semple, supra,* 207 Va. at 439 n. 1, 150, S.E.2d at 537 n. 1. In accord with this thrust of the enabling statute, the County's ordinance provides that, with certain exceptions not relevant here, "[a]ny nonconforming use . . . may be continued but shall not be enlarged or extended". Fairfax County Ordinance § 30-4.2 (1965), formerly § 8.2 (1959).

Recognizing that a nonconforming use need not remain static, we consider whether the *character* of the nonconforming use in existence when the zoning restriction was imposed has been continued or changed. The record shows that the "then existing" use was a general trucking business engaged in hauling random cargoes, that this business was discontinued in 1962, and that the former business was then converted into a specialized commercial enterprise engaged in the collection and disposition of trash. We conclude that the present use bears little resemblance to and is different in character from the "then existing" use.

■ It should be observed that here, as in the lower court, the parties focused principally upon the question whether the current use constitutes an impermissible enlargement or extension of the former use, *see generally* 1 R. Anderson, *supra* § 6.42, or a mere increase in volume, intensity, or frequency of use which many courts have held permissible, *id.* § 6.47; 3 A. Rathkopf, *supra* at 60-1. We believe that, under the ordinance as under the statute, whether a nonconforming use has been increased in size or scope is merely one circumstance relevant to the key determination of whether the character of the use has been changed.

The degree of relevance of any such increase depends in each case upon the quantum of the increase and its effect upon the purposes and policies the zoning ordinance was designed to promote. Here, the magnitude of the change in the size and scope of the use and the effects

of that increase upon zoning objectives reinforce our conclusion that the character of defendants' land use has changed. The "then existing" use, which utilized four small trucks that were parked on unimproved land and repaired and maintained in the shade of a tree, has become a use employing a fleet of 18 large trash compactors whose repair and maintenance require a spacious garage erected on the site and two gasoline tanks installed underground. There was testimony that the increased traffic posed a child safety hazard and disrupted the serene environment of the residential community.

Our conclusion about the changed character of the land use does not terminate our inquiry, for the Zells attack the validity of the ordinance.

First, they argue that Code § 15.1-492 requires ordinances to protect not only the "then existing" use but also a "more restricted" use and that the County's ordinance is void because it contains no express provision to that effect. Equating "more restricted" with "less intense, less objectionable", the Zells say the trash collection enterprise is not as objectionable as the hog raising operation and, therefore, is protected as a "more restricted" use. Even if the Zells' definition of "more restricted" use is correct, their argument is flawed. As we have said, the hog raising operation was a permitted use rather than a nonconforming use. Since Code § 15.1-492 contemplates the protection of a use "more restricted" than the nonconforming use existing on the effective date of a zoning restriction, the hog raising operation may not serve as the standard for determining whether the current use is "more restricted". The proper standard is the general trucking business. Clearly, the trash collection enterprise defendants are now operating is not "more restricted" than the small general trucking business in which the Zells engaged before. Thus, the alleged omission in the ordinance in no way affects defendants, and they consequently lack standing to make this attack on the ordinance. *See County of Fairfax* v. *Parker,* 186 Va. 675, 680, 44 S.E.2d 9, 11 (1947); *see also Stanley* v. *City of Norfolk,* 218 Va. 504, 237 S.E.2d 799 (1977).

The Zells next complain that, while the statute authorizes ordinances that provide for the loss of a nonconforming use upon discontinuance for two years, the County's ordinance fixed the term at six months. Since this provision of the ordinance has never been applied to defendants, they may not challenge it.

We hold the chancellor erred in ruling that defendants' evidence established that the trash collection enterprise was a lawful nonconforming use. For the errors noted, we will reverse the judgment for defendants and remand the cause for entry of a decree in accordance with the views expressed in this opinion.

*Reversed and remanded.*