JANE W. GWINN, ZONING ADMINISTRATOR FOR
FAIRFAX COUNTY, ET AL.

V.

HARRY E. ALWARD

Record No. 850698

June 10, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Thomas, and Whiting, JJ.

*J. Patrick Taves, Assistant County Attorney (David T. Stitt, County Attorney; George A. Symanski, Jr., Senior Assistant County Attorney*, on brief), for appellants.

*Dillard C. Laughlin (Douglass S. Mackall, III; Mackall, Mackall, Walker & Silver*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

On June 29, 1984, Harry E. Alward applied to the Solid Waste Division of the Fairfax County Department of Public Works for a trash-hauling permit, listing 5635 Leesburg Pike as his business address. Alward had been granted such permits since the 1950's. His 1984 application was denied on the basis of zoning violations at the Leesburg Pike address.

Alward filed suit to compel the county to issue the permit. The Board of Supervisors of Fairfax County (the Board) and Jane W. Gwinn, Fairfax County Zoning Administrator (the zoning administrator), filed a cross-bill in Alward's suit alleging that he was in violation of the zoning ordinance because he maintained a junk yard on the property and because he parked operable trash-collection trucks on the property. The county officials requested an injunction against these violations.

A hearing was held on all issues. The trial court denied Alward the relief he sought. The trial court also refused to grant the in-

junction sought by the Board, although the court ordered Alward to remedy the problems complained of by the Board.

The Board and the zoning administrator appeal, arguing that the injunction they prayed for should have been granted. Alward filed a cross-appeal concerning the denial of the relief he requested; we denied all assignments of cross-error. Thus, the focus of this appeal is solely upon the question whether the injunction should have been granted. Because we agree that it should have been granted, we will reverse the judgment of the trial court.

Alward lived at 5635 Leesburg Pike from 1948 to 1973. He first raised hogs on the property, hauling feed for the animals in 12-foot and 16-foot open trucks. At times, he would park these trucks on the subject property.

In 1948, he started his trash-collection business. Alward began his business with three operable trash trucks. He parked his trash-collection trucks on the subject property. He kept inoperable trucks on the property from which he would take parts to use on the operable trucks. Also, he did repair and maintenance work on the property.

According to Alward, he was first required to secure a trash-collection permit sometime in the 1950's. He received a permit each year until July 1984, when his permit application was denied.

Alward admitted that for several years prior to trial, he had stored trash trucks on the property. He also admitted receiving a decision in August 1984 from the zoning administrator that trash-hauling and the storage of trash-hauling vehicles were not permitted uses on the property. He admitted further that he did not appeal this decision. He also admitted that he never secured a non-residential use permit to use the property in connection with a trash-hauling business. Nor did he ever secure such a permit to use the subject property as a storage yard for trash-hauling vehicles. He denied that there was a junk yard on the property.

The Board proved, without contradiction, that at the time of trial, the property contained a vacant house, which was boarded up; a large accumulation of vehicles and vehicle parts; and miscellaneous debris. A police officer who had worked in the area of Alward's property for twelve years said "the entire yard . . . was filled with old rusted trash dumpsters with rusted holes in them, and huge trash trucks, along with some pickup trucks." He testified that the vehicles did not appear capable of being operated. An

engineer with the department of environmental management testified that he had received complaints concerning the property starting in 1980. The complaints concerned the condition of the property, the parking of trash trucks on the public streets near the property, and the presence of rats. Phillip Yates, who was zoning administrator at the time Alward's trash collection application was denied, testified that the property had been zoned C-8 since 1978, and that neither a junk yard nor a storage yard was permitted in that zoning classification.

The trial court also considered a series of letters to Alward from the health department, the zoning administrator, and the public works department, all citing Alward for various violations of County ordinances. Of particular importance are three letters written in 1984. By letter dated April 17, 1984, a senior zoning inspector advised Alward "that the use of 5635 Leesburg Pike is considered by the Fairfax County Zoning Ordinance to be a junk yard . . . . Consequently, the use of this commercial property as a repository for junk vehicles, trash service equipment, and miscellaneous junk and debris is in violation of the Ordinance." By copy of a letter dated August 8, 1984, Phillip Yates, then the zoning administrator, advised that 5635 Leesburg Pike was located in a C-8, highway commercial, zoning district and, as such, could not be used for "trash hauling and related storage of vehicles." By letter dated September 13, 1984, a senior zoning inspector advised Alward that "as the lawful owner of this property, your use of this site as the location for a refuse collection service and the related storage of vehicles observed on September 13, 1984, is in violation of the Fairfax County Zoning Ordinance." Alward did not appeal any of these decisions.

This appeal concerns only Counts One and Two of the Board's cross-bill. Count One alleged that the property was used as a junk yard; that Alward was advised of the violations by letter dated April 17, 1984; and that Alward took no corrective action and failed to pursue any administrative relief. Count Two alleged that Alward parked operable trash-hauling vehicles on the property; that Alward was advised of the violation by letters dated August 8, 1984 and September 13, 1984; and that Alward took no corrective actions and failed to pursue any administrative relief.

In his answer to the amended cross-bill, Alward raised two affirmative defenses: (1) unclean hands, and (2) estoppel based on prior adjudications that Alward's present use of the premises was

a lawful, nonconforming use. Alward did not raise the defense of lawful, nonconforming use except in the oblique fashion set forth in his estoppel defense.

The trial court set forth its findings and conclusions in a letter opinion which it incorporated into its final order. The trial court wrote as follows concerning the property:

> Rats have infested the 5635 Leesburg Pike property at least since 1979. The 5635 Leesburg Pike property has been filled with vehicles which cannot be operated, debris and trash at least since 1979. Tires collected by Mr. Alward in his trash business are also strewn about the lot. Some of the junk trucks on the lot at 5635 Leesburg Pike have been in the same location, without having been operated, for twelve years. . . . Three to six homeless people have regularly stayed overnight in the junk yard at 5635 Leesburg Pike since 1979 . . . . The house on the lot . . . was deemed unfit for human habitation and plackarded in October, 1982 . . . . The refuse accumulated at 5635 Leesburg Pike creates rodent harborage.

The trial court then made the following express findings:

> I find from the evidence that the conditions on the premises at Leesburg Pike create a nuisance adverse to public health. The accumulation of junk cars and other junk and trash creates a harborage for rats and attracts homeless people and is detrimental to health . . . . I find from the evidence that the conditions on the premises as described and the manner of storing garbage and maintaining trucks still at the time of the trial constituted a health hazard and a nuisance.

Despite the foregoing factual recitations and express findings, the trial court refused to grant the injunction sought by the Board and the zoning administrator. The trial court gave two reasons for its decision. First, the trial court was of the view that when the zoning administrator issued his August 8, 1984 letter declaring that the property could "not be used for the business of trash hauling and related storage of vehicles," he had not considered whether the use was "grandfathered." Second, the trial court opined that the zoning administrator's decision had not been issued in the regular course of his office, but had been given as part

of the permit application appeal process. Expanding upon this second reason, the trial court stated in its opinion that the "County may not use the permit renewal procedure to enforce its ordinances." In our opinion, the trial court erred in refusing to issue the injunction.

When this matter came to trial on the cross-bill, the decision by the zoning administrator that Alward was operating a junk yard and parking operable trash trucks on the property in violation of the zoning ordinance was a thing decided and was not subject to attack by Alward. This is so because Alward never appealed the various decisions in which he was declared in violation of the zoning ordinance. *See Henrico County v. Market Inns, Inc.*, 228 Va. 82, 319 S.E.2d 737 (1984); *Phillips v. Telum, Inc.*, 223 Va. 585, 292 S.E.2d 311 (1982); *Knowlton v. Browning-Ferris*, 220 Va. 571, 260 S.E.2d 232 (1979).

Moreover, the trial court was concerned that the zoning administrator had not *sua sponte* considered whether Alward had a lawful, *nonconforming* use to the property as a junk yard. But Alward did not raise that defense. He raised the defense of estoppel. Estoppel does not apply to the government in the discharge of its governmental functions. *See Board of Supervisors v. Booher*, 232 Va. 478, 481, 352 S.E.2d 319, 321 (1987); *Segaloff v. City of Newport News*, 209 Va. 259, 261, 163 S.E.2d 135, 137 (1968). And, in a civil case, the party claiming a nonconforming use has the burden of pleading and proving it. *Browning-Ferris*, 220 Va. at 574, 260 S.E.2d at 235. Thus, on the facts and circumstances of the instant case, we hold that the trial court erred in refusing to grant the county injunctive relief on the ground that the county did not consider whether the landowner had a right to a nonconforming use of the property.

The other basis for the trial court's refusal to grant the requested injunction is that the violations were announced and enforcement was sought within the framework of a dispute over a trash-hauling permit. The trial court thus suggests that there is some formalized manner and method through which the zoning administrator must reach a decision regarding violations and a formalized manner and method by which a decision that a violation has occurred must be enforced. We find no such requirements in the relevant statutes.

Two statutory provisions appear to bear upon the issue. Code § 15.1-491(d) provides in pertinent part as follows:

The zoning administrator shall have *all necessary authority* on behalf of the governing body *to administer and enforce the zoning ordinance*, including the ordering in writing of the remedying of any condition found in violation of the ordinance, and the bringing of legal action to insure compliance with the ordinance, including injunction, abatement, or other appropriate action or proceeding.

(Emphasis added.) Code § 15.1-499 provides as follows:

*Any violation* or attempted violation of this chapter, or of any regulation adopted hereunder *may be restrained, corrected, or abated as the case may be by injunction or other appropriate proceeding.*

(Emphasis added.)

■ Nothing in these two provisions suggests that there is any limitation on the manner or method by which the zoning administrator is to decide that violations exist. Indeed, the language of Code § 15.1-491(d) is expansive, suggesting that a zoning administrator may decide that a zoning violation exists, based on information that comes to his attention by any means, including from a trash-hauling permit application. Any other approach would hamstring the zoning administrator in enforcing the zoning laws. Information that leads to an investigation and the determination that a violation exists could easily come from a myriad of sources. We see no statutory prohibition in that regard.

Nor can we discern from the two provisions cited above, or from any source cited by Alward, why the zoning administrator could not seek to enforce the zoning law by way of cross-bill in a suit previously filed by the landowner. Here, there was an overlap in the facts and in certain of the issues. In his very application for the trash-hauling permit, Alward alleged that he was "in compliance with all Fairfax County Ordinances."

■ The zoning administrator has "all necessary authority" to enforce the zoning laws. We do not perceive in this language any strictures concerning the need to institute an original enforcement action versus filing a cross-bill in a pending suit. So long as the zoning administrator makes clear the basis upon which relief is sought, as occurred here, and the proof is sufficient, as it was, the Board and the zoning administrator are entitled to relief. Therefore, we hold that the trial court erred in denying the requested

injunctive relief on the ground that it could not be sought by way of cross-bill to a suit to compel issuance of a trash-hauling permit.

For all the foregoing reasons, the judgment of the trial court will be reversed and the case remanded with instructions to the trial court to enter the injunction prayed for by the Board and the zoning administrator.

*Reversed and remanded.*