## CIRCUIT COURT OF FAIRFAX COUNTY

William J. Dorn,
Trustee

v.

Fairfax County
Board of Supervisors

May 7, 1992

Case No. (Chancery) 120569

BY JUDGE THOMAS A. FORTKORT

This case is before the Court to resolve issues presented during the bench trial conducted on April 8, 1992. For the reasons set forth below, the Court reverses disapproval of the site plan and authorizes the plaintiff to resubmit the plan to the Department of Environmental Management for full review on the merits.

The events giving rise to this litigation are given in the plaintiff's Bill of Complaint and in the parties' Memoranda. On November 1, 1974, USIF Wynnewood Corporation recorded eleven Declarations among the Fairfax County land records which created Fairfax Heritage I through XI Condominiums. Under the Virginia Condominium Act codified in Virginia Code §§ 55–79.39 to 550–79.103, Fairfax Heritage was established as a contractible condominium. Two parcels were designated as withdrawable land: approximately 15.9087 acres identified as parcel A-1 (the adjacent property), and approximately 4.0261 acres identified as parcel A-2 (the subject property). The plaintiff William J. Dorn, Trustee, is the record owner of parcel A-2, the subject property of this suit.

In February 1989, the plaintiff submitted a site plan to the Fairfax County Department of Environmental Management (DEM) for processing, review, and approval. The site plan proposed development and construction of an eighty-unit apartment building and related improvements to be built on the subject property. DEM returned the site plan to the plaintiff on April 28, 1989, with comments and suggested revisions; and after revising the plan, the plaintiff resubmitted the plan on March 29, 1990.

DEM disapproved the revised plan on May 16, 1990, giving as the basis for its disapproval the plaintiff's purported failure to prove, as a threshold matter, that the subject property had been withdrawn from the condominium regime in accordance with State law or that the property is otherwise developable under State law. DEM made no review of the plan beyond this initial determination. The plaintiff appealed this decision to the Fairfax County Planning Commission in May, 1990, and the Commission denied the appeal and affirmed DEM's findings in November 1990. The plaintiff then appealed to the defendant Board of Supervisors of Fairfax County, who again denied the appeal and affirmed DEM's disapproval of the site plan.

The plaintiff has now brought this suit as a further appeal from the disapproval of the site plan and as an action for declaratory relief. Count I of the Bill of Complaint asks the Court to reverse the decisions made by DEM, the Planning Commission, and the Board of Supervisors in disapproving the site plan. Count II seeks a declaratory judgment as to three issues: that DEM does not have the authority to disapprove the site plan based upon its threshold findings, that the subject property is not encumbered by the condominium regime, and that the property is not undevelopable solely because it was not withdrawn from the regime.

Four questions arise in determining whether the Court should reverse the decisions made by the County and grant the declaratory relief requested by the plaintiff. First, the Court must consider whether DEM's decision, which was affirmed by the Planning Commission and the Board of Supervisors, is arbitrary and capricious. Second, the Court must decide whether the subject property was properly withdrawn from the condominium regime or never added to it; third, the Court must address whether the Subdivision Ordinance prevents the plaintiff from developing the property. Finally, the Court must determine whether DEM's mention that the development

would be constructed within the recorded 100-year flood plain easement prevents the plaintiff from developing the property.

### Review of the Decisions

The plaintiff claims that the decision of DEM and its approval by the Planning Commission and the Board of Supervisors are arbitrary, capricious, and unfair. This claim provides the cause for this appeal to the Circuit Court under Virginia Code § 15.1–475. The plaintiff contends that the basis for DEM's disapproval of the site plan is not found in the express or implied authority given to DEM. Under *Hylton Enterprises, Inc. v. Board of Supervisors*, 220 Va. 435, 258 S.E.2d 577 (1979), the Virginia Supreme Court found that disapproval of a site plan is arbitrary and capricious if the basis for the disapproval is not given to the governmental body either by statute or by necessary implication of that statute.

The question before the Court is whether DEM had the express or implied authority to disapprove the site plan based on DEM's determination that the property was not properly withdrawn from the condominium regime. The Virginia General Assembly has granted counties the authority to regulate the submission and approval of site plans in Code § 15.1–491(h) and the authority to regulate the content of site plans in Code § 15.1–466. The plaintiff argues that this latter statute addressing content does not permit a county to disapprove a plan based on its finding that the property was not properly withdrawn from a condominium regime under § 55–79.64 of the Virginia Condominium Act.

The defendant Board of Supervisors argues instead that § 15.1–466 is not an exhaustive list of items which may be taken into consideration in the review and approval or disapproval of a site plan.

Fairfax County has used the enabling legislation to enact its own regulations as to the preparation and approval of site plans. Fairfax County Code Chapter 112, § 17–107, describes the authority of the Director of DEM in reviewing site plans. Again, this law does not state explicitly that the Director of DEM may disapprove a site plan based on his finding that the property was not properly withdrawn under the Condominium Act. The Board of Supervisors argues here that Fairfax County Code Chapter 112, § 17–109(1), provides that site plan approval must comply with all provisions of the law, including compliance with withdrawal provisions of the Virginia Con-

dominium Act. In response to this claim, the plaintiff contends that DEM and the Board cannot use their limited authority as to the approval or disapproval of site plans as a means to enforce all state laws, and that under § 17–109(1), it is the approval process rather than the site plan itself that must comply with all provisions of the law.

The Court finds that DEM's decision to disapprove the site plan because the plaintiff did not show compliance with law outside Virginia Code Title 15.1 and Fairfax County Code Chapter 112, § 17, does not make the decision an arbitrary and capricious ruling. The state and local legislation on the authority to regulate site plans provides criteria which must be satisfied before a site plan can be approved, but the legislation does not provide an exhaustive list of what is to be considered before approval or disapproval. The relevant sections of the Condominium Act, including the provision for withdrawal of property, became law ten years after enactment of the predecessor statute to Code § 15.1–491(h) in 1964. Argument can be made that later grants of authority to the County such as those given in the Condominium Act are to be considered in site plan review. DEM's decision to disapprove the site plan based on Virginia statutory law outside Code Title 15.1 and Fairfax County Code Chapter 112, § 17, is therefore not arbitrary and capricious.

It is disturbing, however, that the site plan review treats a matter of law as a threshold question because this procedure does not enable either party to explore the site plan issues completely. The County could engage in a series of threshold decisions that would require the plaintiff to make the long trek through the administrative appeals process to the courts for final adjudication on more than one occasion. The Court holds that DEM has the authority to disapprove a site plan for failure to meet legal requirements, although interpretation of these legal requirements is the sole province of the court. DEM's determination that such a legal requirement constitutes a threshold decision precluding further review raises due process questions admittedly not addressed in this appeal. Adjudication rather than attrition should be the goal of these administrative processes. The interests of all parties would be better served if DEM were to provide a complete evaluation of the site plan on first review, outlining all bases of disapproval. With a full review on the merits, the plaintiff would not be limited on appeal by one or possibly several threshold decisions.

On the issue of whether DEM's decision was arbitrary and capricious, the plaintiff next argues that the Virginia Supreme Court's ruling in *Holland v. Johnson*, 241 Va. 553, 403 S.E.2d 356 (1991), applies to prevent the Board of Supervisors from making a legal determination as to the plaintiff's ability to develop the property. In *Holland*, the Virginia Supreme Court addressed whether a zoning administrator could decide if the corporation had a vested right to develop a rock quarry. The Court held that Virginia Code § 15.1–491(d) did not authorize the zoning administrator to adjudicate property rights and that property rights could be determined only by a court of competent jurisdiction.

The plaintiff contends that *Holland* prohibits the Board of Supervisors from deciding that the subject property was not properly withdrawn from the condominium regime because the Board's decision abolishes the plaintiff's right to develop the property. The Board of Supervisors argues instead that under cases such as *Knowlton v. Browning-Ferris Ind. of Virginia, Inc.*, 220 Va 571, 260 S.E.2d 232 (1979), the Virginia courts routinely have allowed zoning officials to affect the developability of property. *Knowlton* is not a case illustrative of the Board of Supervisors' asserted principle, however. In *Knowlton*, the Supreme Court of Virginia held that a property owner had the burden of proving that his use of property was a lawful nonconforming use once the locality had demonstrated that the owner's use was not permitted under the particular zoning ordinance. The zoning administrator in this case sought the Court's power to enjoin what it asserted to be a non-conforming use; if the zoning administrator had determined as a matter of law that the non-conforming use was a vested right, the rule in *Holland* would clearly apply.

In the case presently before the Court, DEM's threshold decision that the petitioner had not properly withdrawn the subject property from the condominium regime has all the earmarks of a decision of law rather than a decision of fact. Such a decision of law as to the plaintiff's property rights is beyond the power of administrative agencies under the ruling of the Virginia Supreme Court in *Holland*. The Court finds that DEM's decision was arbitrary and capricious under this standard.

The plaintiff also claims that DEM's decision was arbitrary in view of its approval of the site plan of the adjacent property. The title history of the adjacent parcel for the relevant period of time is essen-

tially identical to that of the subject property. The defendant claims that the review and approval of the site plan for the adjacent parcel was done in error and that the defendant is not required to make the same error again.

The Court recognizes that the parcels are similarly situated and therefore deserve comparable treatment. For the Court to make a determination as to whether DEM's decision and the subsequent administrative review were arbitrary and capricious, however, the Court must know the entire basis upon which the site plan was rejected. If the Court had determined that the defendant is not in compliance with the Condominium Act, for example, then the disapproval of the site plan could hardly be considered arbitrary and capricious although the site plan for the adjacent property had been approved.

While the title history of the adjacent parcel for the relevant period of time is a factor that DEM, the Planning Commission, and the Board of Supervisors should have considered in their decisions, this factor is not the single controlling issue. Other differences between the subject property and adjacent property could justify disapproval of the site plan presently under consideration. The Court recognizes, for example, that the flood plain easement and subdivision ordinance issues are specific to the subject property; other distinctions between the two properties may become evident during the complete review of the site plan. These distinctions could render DEM's decision to disapprove the site plan reasonable, or at minimum, not arbitrary and capricious.

### Withdrawal or Failure to Add the Subject Property

#### Withdrawal of the Property.

The question of whether the land was properly withdrawn from the condominium regime or never added to it must be addressed to determine if the plaintiff can now develop the land. The plaintiff concedes that he did not withdraw the subject property in compliance with Code § 55–79.64 within the seven-year period required by the Declarations. The plaintiff claims instead that the Amendments to the initial Declarations filed on Condominiums I-VI and VIII between July 21, 1978, and July 7, 1980, have accomplished the withdrawal by removing any possibility of adding the subject property and the adjacent parcel to the condominium regime.

The Virginia Condominium Act provides that a declarant may amend the condominium instrument if there is no unit owner other than the declarant. Va. Code Ann. §55–79.71. The plaintiff contends that during the period between July 21, 1978, and July 7, 1980, Arlen Realty, Inc., the successor declarant to USIF Wynnewood Corporation, owned all of the parcels subject to the condominium regime. The Amended Declarations surrender the identical parcels to the condominium regime that were submitted in the original Declarations; but the plaintiff claims that unlike the original Declarations, the Amended Declarations do not provide that the subject property and the adjacent parcel can be added as additional land. He claims that all condominiums except Fairfax Heritage VII disallow addition of the subject property and adjacent property. As for Condominium VII, the successor declarant recorded an Amended Declaration on April 8, 1981, which terminated the option to expand the condominium.

In response to this argument, the defendant Board of Supervisors contends that Virginia Code § 55–79.64 specifically addresses how a condominium is to be contracted and that this specific statute should control over the general provision given in § 55–79.71 for the amendment of the condominium instrument.

The Court finds on this issue that the Amended Declarations do not accomplish withdrawal of the subject property as authorized by the Condominium Act. The Board of Supervisors is correct in its contention that the specific direction given in Code § 55–79.64 controls the manner in which to withdraw property from a condominium regime.

*Failure to Add the Property.*

The plaintiff claims that the subject property was identified as both additional land and withdrawable land when the Declarations establishing the condominium regime were recorded in 1974 and that the subject property was never added to the regime and is therefore not now governed by it. He argues that the initial Declarations and Plat which established Fairfax Heritage Condominiums I-VIII surrender to the condominium regime only those parcels of land identified on the plat with the corresponding numbers I-VIII. Since the subject property and the adjacent property are not identified in this manner, they were not originally governed by the condominium regime and subsequently have not been added to it.

The Board of Supervisors contends instead that the subject property and the adjacent property are identified as withdrawable land on the original Declarations and therefore that these parcels are part of the land originally submitted to the condominium regime. On this matter, the Board first argues that withdrawable land is necessarily part of the land submitted to form the condominium and that the plaintiff has only recently raised the possibility that the property was never added to the regime. The defendant cites testimony given by the defendant's attorney at the Planning Commission Hearing on November 15, 1990, as indicative of the plaintiff's earlier position that the Amended Declarations effectively withdrew the subject property from the regime. The Board argues that *Burch v. Grace Street Building Corporation*, 168 Va. 329, 340, 191 S.E. 672, 677 (1937), prevents the plaintiff from arguing alternate theories in the course of a suit.

The Board of Supervisors also argues that the April 8, 1976, Amendment to the Condominium Instruments for Condominiums I through XI changed the rights of the record owners of the subject property and the adjacent property to designate a member of the board of directors. The defendants claim that there would be no reason to assign a position on the board of directors to property outside the condominium regime. However, the plaintiff argues that this Amendment refers to the Recreation Association's Board of Directors rather than the Condominium Board of Directors, and he asserts that the Board's argument here contradicts their own contention that the property was never intended for development and thus would have no unit owners. The Board of Supervisors claims as well that deeds conveying individual parcels located within the adjacent property confirm that the subject property and adjacent property were considered part of the condominium regime and were never withdrawn.

The Court accepts the plaintiff's claim that the property was never added to the condominium regime. The Board of Supervisors concedes in response to the plaintiff's First Requests for Admission that the initial Declarations describe the subject property and adjacent property as additional and withdrawable. The initial Declarations and Plat surrender to the condominium regime only those parcels of land identified on the plat with the numbers I-VIII. The subject property and the adjacent property are not identified with this group; the

Declarations and Plat indicate that these parcels were not governed initially by the condominium regime. The Court finds that the subject property is not encumbered by the regime and that failure to withdraw the property under the Virginia Condominium Act was not a proper basis for disapproval of the site plan.

## Compliance with the Subdivision Ordinance

The defendant claims that the plaintiff is precluded from developing the subject property because the property does not comply with the Fairfax County Subdivision Ordinance codified in the Fairfax County Code, Article I, § 23.1 (1970). The Board's disapproval of the site plan, which is the basis for this appeal to the Circuit Court, was not founded on a violation of the Subdivision Ordinance, and therefore compliance with the Subdivision Ordinance is irrelevant to this appeal. However in the interest of judicial economy, the plaintiff does not object to the Court's consideration of this issue.

The Subdivision Ordinance did not apply to condominiums when the Fairfax Heritage Condominiums were created in 1974. The Court has determined that the subject property was never added to the condominium regime; therefore this property does not have the benefit of the initial inapplicability of the Subdivision Ordinance. The site plan that the plaintiff submitted in February 1989 clearly must comply with the Subdivision Ordinance. The plaintiff claims that such a violation of the Ordinance does not preclude him from developing the property because the imposition of a fine is the only remedy authorized for violation of the Ordinance.

A complete review of the site plan by DEM is appropriate although the plaintiff has not complied with the Subdivision Ordinance. Upon review of the site plan on the merits, DEM can address this issue and the plaintiff can initiate compliance procedures.

## The Flood Plain Easement

Finally, the Board of Supervisors claims that relief is barred because DEM mentioned in its communication with the plaintiff that the apartment complex would be constructed within the recorded 100-year flood plain easement. The Board argues that any further review of the site plan for the subject property would be a futile act because DEM recognized that a portion of the subject property is located in the easement, and the Board urges the Court to deny further review of the site plan.

On this issue the Court reaffirms its earlier ruling that the only basis for DEM's decision was the threshold issue of proper withdrawal of the property and that the Director of DEM mentioned the flood plain problem only as a secondary matter. DEM's observation as to the flood plain easement was not the basis of its decision to disapprove the site plan, and therefore full review of the site plan is appropriate and is not affected by the Director's recognition of the easement.

## Conclusions

The Court reverses the DEM's decision to disapprove the site plan and authorizes the plaintiff to resubmit the site plan to DEM for review on the merits. Although DEM's decision was not arbitrary and capricious because it made a determination based on criteria outside Virginia Code Title 15.1 and Fairfax County Code Chapter 112, § 17, the decision was arbitrary and capricious because DEM exceeded its authority in making a finding of law as a threshold decision that precluded further review of the site plan. The Court refuses the plaintiff's contention that the Amended Declarations remove the property from the condominium regime but accepts the plaintiff's claim that the land was never added to the regime. Failure to withdraw the subject property from the condominium regime was not a proper basis for disapproval of the site plan in this case. A complete review of the site plan by DEM is warranted although the plaintiff has not complied with the Subdivision Ordinance and mention of the existence of the recorded 100-year flood plain easement by the Director of DEM likewise does not does not prevent full review of the site plan.