## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Edenton

v.

Zoning Appeals Board

Case No. L93-46

Spotsylvania County
Board of Supervisors

v.

Zoning Appeals Board

Case No. L93-47

Spotsylvania County
Board of Supervisors

v.

Edenton

Case No. C95-39

July 17, 1995

BY JUDGE WILLIAM H. LEDBETTER, JR.

The primary issue in this zoning case is whether the present use of the landowners' property is a continuation of the use that existed when the

zoning ordinance was adopted thereby making it a permissible noncon-
forming use.

### Factual Background

When VEPCO built a dam across the North Anna River in the late
1960's, Lake Anna was created. As the water rose, it backed up into the
creeks that fed the river, forming inlets and coves.

The Edentons owned several tracts of land on Route 208 near what is
now Lake Anna. Sturgeon Creek ran through the property. By August of
1972, Sturgeon Creek, which had been little more than a stream flowing
into the North Anna River, had become a sizeable cove, entirely separating
the Edentons' properties adjacent to Route 208 from other parcels on the
east side of the creek.

When the Edentons saw what was happening, they used foresight and
creativity to build a marina and campground on the west side (i.e., the
Route 208 side) of the creek. That enterprise, at that location, is not in-
volved in this controversy.

Spotsylvania County adopted a zoning ordinance in April 1973. The
ordinance was adopted pursuant to Virginia Code § 15.1-492, which re-
quires local governing bodies to protect nonconforming uses as "vested
rights" so long as the existing use or a more restricted use continues and
is not discontinued for more than two years. See Ordinance § 6-1.9.

The land on the east side of Sturgeon Creek was first zoned Agricul-
tural; in 1974, it was rezoned Resort Agricultural. Neither of these zoning
classifications permits (or ever permitted) a commercial camping opera-
tion of the sort now argued for by the Edentons.

In 1992, in response to complaints, County zoning officials and health
department officials discovered that the Edentons were allowing campers
to cross Sturgeon Creek and establish campsites on the east side. These
officials found permanent and semi-permanent structures on the land.
Waste pits ("pit privies") had been dug for sewage disposal. There was no
running water or vehicular access. The zoning administrator issued a cease
and desist order on August 14, 1992. A few days later, the director of the
Health Department issued a similar order for alleged violations of the
Department's sewage disposal regulations.

Claiming that their present activity on the east side of Sturgeon Creek
predated the adoption of the County Zoning Ordinance and thus is a per-
missible nonconforming use, the Edentons appealed the zoning adminis-
trator's decision to the Board of Zoning Appeals (BZA). After a public
hearing, the BZA determined that the Edentons have a vested right to 12

camping units ("a mixture of tents and factory-made trailers") on the east side of Sturgeon Creek, subject to compliance with appropriate Health Department standards for sewage disposal and drinking water. The BZA directed that all other structures must be removed.

The Edentons (# L93-46) and the County Board of Supervisors (# L93-47) filed separate petitions for certiorari to this court.

Meanwhile, the County filed a petition for injunctive relief (# C95-39) contending that the Edentons' continuing use of the east side as camping sites posed an imminent threat to health and safety. By agreement, the court took up the request for injunctive relief first and set the zoning appeals for hearing on a later date. After a hearing on February 21, 1995, the court granted the injunction because of the health and safety concerns, thereby restraining the Edentons "from operating campground activities" on the east side of Sturgeon Creek until further hearing on June 7, 1995.

On June 7, 1995, the court heard the zoning appeals on the record made before the BZA and, in accordance with § 15.1-497, upon further evidence presented by the parties and arguments of counsel.

At the hearing, the Edentons abandoned their petition for certiorari. They now take the position that the BZA was correct in allowing them to use a limited number of campsites (12) on the east side.

The County maintains that the use is prohibited altogether because no meaningful camping activity existed on the east side of the creek prior to April 1973; and, if it did, the County argues, the present use is not a legitimate nonconforming use because the activity was illegal when it commenced and, further, it has lost its nonconforming use status by unlawful expansion.

### Decision

It is axiomatic that zoning laws cannot be used to abrogate lawful pre-existing uses. Otherwise, the zoning ordinance would be invalid because it would deprive landowners of vested property rights. For this reason, zoning ordinances contain provisions such as Spotsylvania County's Ordinance 6-1.9, adopted in accordance with the enabling legislation (specifically, § 15.1-492), that protect vested rights by providing for continuation of lawful nonconforming uses that existed at the time the zoning law was enacted.

A nonconforming use is defined as a use which lawfully existed prior to the enactment of a zoning ordinance and is allowed to continue despite the fact that it does not comply with the newly-enacted ordinance. Such a

pre-existing use is said to be a vested right that zoning laws generally cannot annul. 83 Am. Jur. 2d, *Zoning and Planning*, § 624.

Nevertheless, zoning ordinances can impose restrictions on nonconforming uses, and they invariably do. For example, the pre-existing use must continue as it existed at the time the zoning law was enacted, with some exceptions, or in a more restricted state; the right to continue a nonconforming use terminates if the use if abandoned or discontinued for a significant period of time (e.g., two years); and the pre-existing use cannot be substantially changed, increased, or expanded, at least to the extent that the character of the use is altered. Further, the nonconforming use provisions of zoning ordinances offer no protection to unlawful uses that may predate the enactment of the zoning ordinance.

### (1) *Did the Use Predate the Zoning Ordinance?*

The evidence is in dispute with respect to whether the Edentons used the east side of Sturgeon creek for camping purposes prior to enactment of the zoning ordinance. The Edentons testified before the BZA and in this court at the hearing on June 7, 1995, that they permitted people to camp on the east side of the creek as early as 1971. The County presented evidence before the BZA and additional evidence here to contradict that assertion.

In order for the BZA to decide that the Edentons have a vested right to "camping units" on the east side of the creek, the BZA had to accept at least the substance of the Edentons' testimony regarding pre-1973 camping activity there.

On appeal, there is a presumption that the board's decision was correct. The burden is on the petitioner for certiorari to show that the board's decision is plainly wrong and violative of the purpose and intent of the zoning ordinance or that the board applied erroneous principles of law. In cases where discretion is involved, the court cannot substitute its discretion for that of the BZA. *Foster v. Geller*, 248 Va. 563 (1994); *Prince William County v. Bond*, 225 Va. 177 (1983); *Board v. Combs*, 200 Va. 471 (1959).

In resolving this issue, no discretion is involved. In order for the Edentons to use their property on the east side of Sturgeon Creek for commercial camping purposes, the evidence must establish, at the threshold, that the use existed prior to the adoption of the zoning ordinance in April 1973. If it did, the Edentons have a vested right to continue the use, provided the other requirements for a permissible nonconforming use are met. If it did not, the BZA has no authority to allow the Edentons to continue the use,

even on a limited basis, because the property is located in a zoning district that does not permit, and has never permitted, the use.

Giving proper deference to the findings of fact made by the BZA, the court nonetheless is of the opinion that the decision is plainly wrong and that erroneous principles of law have been applied to the facts found.

Every pre-existing use does not qualify as a sufficient use to give rise to a vested right. The commonly applied guideline is that only a use which is substantial in the sense that its termination would involve significant financial, property, or other economic results will be protected. In applying the guideline, some courts have suggested that the pre-existing use, in order to be protected as a nonconforming use, must be significant enough so that it was "known in the neighborhood." Almost universally, whether or not the above guidelines are employed, courts have held that to establish a vested right to a nonconforming use, the pre-existing use must have been something more than intermittent or occasional. See 83 Am. Jur. 2d, *Zoning and Planning*, § 637 and § 638.

Here, there can be no doubt from the evidence in the record that any camping activity that took place on the Edentons' property on the east side of Sturgeon Creek prior to April 1973 was intermittent, occasional, sporadic, and random. The Edentons were operating a legitimate marina and campground on the *west* side of the creek. Only infrequently did a camper cross the creek by boat — the only access — to camp overnight, for several nights, or for a weekend on the east side. There was no vehicular access, no running water, no proper waste disposal on that side of the creek. Therefore, even accepting the Edentons' version of the facts, as the BZA apparently did, those facts establish nothing more than irregular and infrequent use prior to April 1973, which does not qualify for protection as a vested right to use that property as a commercial campground, even on a limited basis.

### (2) *Pre-existing Use Must Be Lawful*

Assuming that the BZA's decision was correct regarding the Edentons' pre-existing use of the east side for camping purposes, the fact remains that that use was unlawful. The court is of the opinion that the board applied erroneous principles of law when it determined that the Edentons have a vested right to continue this unlawful use.

The evidence proffered to the BZA and presented in court at the June 7, 1995, hearing establishes beyond question that the pre-1973 camping activity on the east side of the creek was in violation of the law in several

respects. First, any structures built there would have required a building permit. No such permits were sought or issued. Second, and more important, commercial campsites were subject to health department regulations regarding waste disposal and water supply as early as 1971. The Edentons were in violation of those health and safety laws on the east side of the creek from the inception of their activity there. (In fact, they are noncompliant today, justifying the temporary injunction ordered by this court on February 21, 1995, in Case # C95-39.)

Nonconforming uses are not protected where they were not lawfully commenced. Most courts will not recognize a nonconforming use if the use was begun without permits or licenses. See, e.g., *Town of Wilson v. Kunstmann*, 96 N.W.2d 709 (Wisc. 1959) (pre-existing trailer park commenced without license). Although this specific issue has not been addressed in Virginia, the Supreme Court has consistently stated that a landowner who claims a nonconforming use must show that his use is a "lawful nonconforming use." See, e.g., *Knowlton v. Browning-Ferris*, 220 Va. 571 (1979).

Because the Edentons' use of the east side of the creek for camping activity prior to April 1973, if such use existed at all, was unlawful, such use cannot be recognized as a nonconforming use that would entitle them to use that property as a commercial camping facility, even on a limited basis.

### (3) *Expansion of Pre-existing Use*

If, as they contend, the Edentons used the east side for camping prior to April 1973, they did so only on an occasional or intermittent basis. Later, "privy pits," permanent and semi-permanent structures, and other indicia of camping activity appeared so that by 1992, the neighbors were aware that, in essence, the Edentons were expanding their campground across the creek.

The Virginia courts have acknowledged that a nonconforming use need not remain static. *Knowlton v. Browning-Ferris*, 220 Va. 571 (1979). Trivial, insubstantial, or reasonably customary and incidental change is permitted. However, unlawful changes or expansions of use can result from increased volume or frequency of use. See 83 Am. Jur. 2d, *Zoning and Planning*, § 669. The degree of relevance of any change depends in each case upon the quantum of the increase and its effect upon the purposes and policies the zoning ordinance was designed to promote.

In *Knowlton, supra*, the Supreme Court held that the magnitude of the change in size and scope of the use and the effects of that increase upon zoning objectives was such that the *character* of the landowner's use had changed thereby disqualifying the use as a protected nonconforming use. In that case, a general trucking business utilizing four trucks was converted to a trash collection business using 18 trucks and employing 43 persons. The Court found that the use was not a permissible nonconforming use because the character of the use had changed.

In *Spotsylvania County BZA v. McCalley*, 225 Va. 196 (1983), the subject property was used as a warehouse and automobile repair shop prior to adoption of the zoning ordinance. Thereafter, the landowner used it to assemble boats, trailers, and related equipment, and still later used it for a metal fabrication operation. The Court held that the *character* of the use had changed so that the use had ceased to enjoy the exemption as a nonconforming use.

Here, even accepting the Edentons' evidence about the pre-1973 camping activity on the east side of the creek, it is apparent that the magnitude of change in the size and scope of the activity and the effects of that increase upon zoning objectives has altered the *character* of the use. Infrequent and casual use cannot be enlarged or extended to a permanent commercial campground without changing the very character of the use. The present use of the east side of Sturgeon Creek (or, more accurately, the use until it was enjoined in February of this year) bears little resemblance to and is different in character from any use that may have predated the zoning ordinance. See *Knowlton, supra.*

For this reason, then, the present use is not a nonconforming use that entitles the Edentons to use that property as a commercial camping facility, even with a specifically limited number of "camping units."

## Conclusion

For the foregoing reasons, the court is of the opinion that the BZA decision was plainly wrong and applied erroneous principles of law to the facts. To allow the Edentons to expand their commercial campground across the creek into a zoning district that does not permit such use on the ground that the use predates April, 1973, and therefore is a vested or "grandfathered" right would violate the purpose and intent of the zoning ordinance and would be contrary to accepted principles governing the proper continuation of nonconforming uses.

Mr. O'Keefe will please prepare a sketch final decree making reference to this opinion, reversing and vacating the decision of the BZA. As for the County's petition for injunctive relief, that case is now moot. If the Edentons cannot use their east side property for commercial camping, as the court has now held, no injunction based on noncompliance with health and safety regulations is necessary. Therefore, the order should be drafted as a final disposition of all three cases before the court.