# CIRCUIT COURT OF SHENANDOAH COUNTY

Town of Mount Jackson

v.

Herman Fawley et al.

March 21, 2000

Case No. (Chancery) 98-203

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on March 17, 2000, on the Town of Mount Jackson's Motion for a Declaratory Judgment as to whether Herman Fawley has a vested right to use his property to maintain and repair tractor trailer trucks which he uses in his transport business, because, under the Town's zoning ordinance, a motor vehicle repair facility is not a permitted use in a residential zoning district. The parties appeared in person with their counsel, and evidence was heard and argued. After consideration, the Court has decided that Herman Fawley's use of his property for a motor vehicle repair facility is not a lawful, nonconforming use.

## I. *Findings of Facts.*

The following facts are found by the greater weight of the evidence.

Herman Fawley occupies property at 160 Shenandoah Avenue in the Town of Mount Jackson, Virginia, which is currently located in a R-2 residential district of the Town. The property is improved by a metal garage, and Mr. Fawley maintains that the property may be used as a maintenance

facility for his over the road transport business, because it is a grandfathered nonconforming use.

Neither a commercial garage nor a motor vehicle maintenance facility is a permitted use in the Town's R-2 Residential District, and has not been since the Town promulgated its zoning ordinance on October 10, 1979.

Nathan Beall, who owns property adjoining Fawley, complains that Fawley's use of his property is unlawful and should cease. The Town has filed this declaratory judgment action to resolve the dispute over Fawley's use of his property as a motor vehicle maintenance facility.

When Mt. Jackson's zoning ordinance was enacted in 1979, the subject property was used as a commercial garage, which is the time that the zoning restrictions prohibiting motor vehicle repair on the subject property were imposed.

In 1979, the garage was owned and operated by Waldo Zirkle, and the garage serviced primarily tractor trailer trucks. A heavy wrecker service was also operated from the property by the Zirkles. This use of the property as a commercial garage and towing service continued until about 1987.

After the death of the Mr. and Mrs. Waldo Zirkle in 1986 and 1987, respectively, the Zirkle family continued the Zirkle business for a short time. After the Zirkles, several other people used the property as a truck repair facility like that conducted by the Zirkles for a short period.

Beginning in about 1988 or 1989, Richard Thomas leased the property. Mr. Thomas operated a carnival business, which is seasonal, and he stored carnival equipment on the property when the carnival equipment was not in use. He used tractor trailers to transport his carnival equipment, and he also parked those truck tractors and trailers on the property, when they were not in use. Thomas also occasionally performed routine services and repairs on his tractor trailers and carnival equipment on the property. Thomas used the property in this manner for more than two years.

In March 1992, Fawley rented the subject property from Richard Thomas, and since that time he has used the property to park and service his tractor trucks and their trailers which he uses in his over the road transport business and for which he is licensed as a common carrier. Occasionally, he services trucks belonging to other people who are his friends as a personal accommodation, but the operation of a public garage has never been his principal use of the property. The property is now essentially being used by Mr. Fawley as a maintenance facility for the trucks and trailers which he uses in his over the road transport business.

There has never been a continuous two year period since 1979, when the property has not been used for some business purpose as described above.

Article XII of the Mount Jackson Town Code governs nonconforming uses, and it provides in pertinent part that:

> Sec. 66-367(a). If, on October 10, 1979, any legal activity which is being pursued on any lot . . . for a purpose which does not conform to the provisions of this chapter, such manner of use may continue as provided in this section.
>
> Sec. 66-367(b). If, at any time after October 10, 1979 . . . any such existing nonconforming activity or use of a lot or structure has been discontinued for a period exceeding two years, it shall be deemed abandoned, and any subsequent use shall conform to the requirements of this chapter.

## II. *Conclusions of Law*

In deference to the constitutional prohibition against impairing vested property rights without compensation, Virginia Code § 15.1-492 assures a landowner's right to continue the "lawful use" of any land, buildings, and structures "existing on the effective date of the zoning restriction and continuing since that time in non-conformance to the ordinance." *Knowlton v. Browning-Ferris*, 220 Va. 571, 572, n. 1, 260 S.E.2d 232, 234, n. 1 (1979). In *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 47, 353 S.E.2d 727 (1987), adjoining landowners successfully challenged the use of land in a residential district as a parking lot for an adjoining hotel complex, and the Supreme Court discussed the burden of proof procedure in land use cases:

> In a civil action in which a use is challenged as illegal, the challenging party has the initial burden of producing evidence to show the uses permitted in the zoning district in which the land is located and that the use of the land is not a permitted use. Upon this showing, the burden shifts to the landowner to show that his use is a lawful nonconforming use. *Knowlton v. Browning-Ferris*, 220 Va. 571, 574, 260 S.E.2d 232, 235 (1979).

In a civil suit based on a nonconforming use, the "land user has both the burden of initially producing evidence tending to prove a lawful nonconforming use and the burden of persuading the factfinder." *Id.* at 574, 260 S.E.2d at 235. Thus, "the risk of non-persuasion . . . rests with the land user claiming the right to continue a nonconforming use." *Id.* at 575, 260 S.E.2d at 236.

52

In any nonconforming use case, once it has been determined that the use in question is not a permitted use, the burden then shifts to the landowner to first show the character of his nonconforming use in existence at the time when the zoning restriction was imposed upon his property, which in this case was 1979, and then to show that his use of the property has not substantially changed. The first or grandfathered use is the baseline which must first be established so that the character of the current use in question may be assessed. This principle was recognized by the Supreme Court in *Knowlton v. Browning-Ferris*, 220 Va. 571, 576, 260 S.E.2d 232 (1979), where the Supreme Court stated that:

> Recognizing that a nonconforming use need not remain static, we consider whether the character of the nonconforming use in existence when the zoning restriction was imposed has been continued or changed.

In this case the "then existing use" at the time the restriction was placed upon the property in 1979 was a commercial truck and motor vehicle repair and towing facility, i.e., a commercial garage. When Richard Thomas began using the property, the principal use of the property was for the storage of carnival equipment when it was not in use, the repair of that carnival equipment, and the occasional repair and maintenance of the trucks and trailers which were used to transport the carnival equipment. Therefore, from 1989 to 1992, while motor vehicle maintenance was occasionally done on the property on the vehicles which transported Thomas's carnival equipment, which was stored and repaired on the property, the principal use of the property was for the storage and repair of carnival equipment, which was an unlawful use of the property. The occasional motor vehicle repair which Thomas performed on the property was an incidental or accessory use to the his primary or principal use of the property, which was the storage and repair of carnival equipment.

A use incidental to a lawful nonconforming use cannot over time increase into a principle use of a property. *Knowlton v. Browning-Ferris Industries*, 220 Va. 571, 575-76, 260 S.E.2d 232 (1979). In *Board of Zoning Appeals v. McCalley*, 225 Va. 196, 300 S.E.2d 790 (1983) (decided on discontinuance of use), the Supreme Court noted that property which was grandfathered as a nonconforming use as an automobile repair facility could not be used as a metal fabrication facility. By like logic, a use incidental or accessory to an unlawful, nonconforming use cannot be used as a basis to continue the nonconforming use of property.

"Nonconforming uses are not favored in the law because they detract from the effectiveness of a comprehensive zoning plan." *City of Chesapeake v. Gardner Enterprises*, 253 Va. 243, 248, 482 S.E.2d 812 (1997). Accordingly, if the use is discontinued for more than two years, it is no longer permitted, and if the nonconforming use is changed to a more limited use, the right to the earlier more expansive use is lost. *See Donovan v. Board of Zoning Appeals*, 251 Va. 271, 275, 467 S.E.2d 808 (1996) (local ordinance so stated). In this case, Fawley claims that his use of the property as a maintenance facility for his trucking business is a more limited or stepped down use of the property and that, since some motor vehicle maintenance has continued on the property without a two year lapse, his right to maintain a private truck maintenance facility continues to be grandfathered.

Virginia Code § 15.2-2307 provides that:

A zoning ordinance may provide that land, buildings, and structures and the uses thereof which does not conform to the zoning prescribed for the district in which they are situated may be continued only so long as the then existing or a more restricted use continues and such use is not discontinued for more than two years . . . .

Mt. Jackson Town Code § 66-367(c) contains comparable provisions providing that a two year discontinuance of a use will result in the loss of a vested right to continue the nonconforming use. The Mount Jackson Town Code is silent on the issue of whether a change to a more restricted or stepped down use under the grandfathered, nonconforming use is permitted. "The rule which prevails in most jurisdictions, at least in the absence of any statute to the contrary, is that since zoning ordinances are in derogation of the common law and operate to deprive an owner of a use thereof which otherwise would be lawful, they should be strictly construed in favor of the property owner." 83 Am. Jur. 2d, *Zoning and Planning*, § 699. *See, e.g. Young v. Town of Vienna*, 203 Va. 265, 123 S.E.2d 388 (1992) (revenue ordinance must be strictly construed). Since the Town Code is silent on this point, a change to a stepped down motor vehicle repair use would be permitted.

The purpose of the doctrine of grandfathered, nonconforming uses is to protect a landowner's right to use his property for the particular purpose for which it has historically been used. Accordingly, changes in nonconforming uses must be closely examined, because every change harbors the potential for an unlawful use outside the parameters of the grandfathered use. As the editors of 83 Am. Jur. 2d, *Zoning and Planning*, § 653, state:

> The right to continue an existing use as a nonconforming one is not without limitations. While the established use may be continued . . . there is no constitutionally protected right to change one nonconforming use to another, and the change to a different use inconsistent with the zoning regulations is commonly prohibited.

Similarly, in Anderson's *American Law of Zoning* § 6.37 (4th ed. 1996), it is stated:

> Changes from one nonconforming use to another, even very similar in character, have usually been disapproved. For example, substitution of an automobile body shop for a garage was held to be unlawful, as was a grocery store with gasoline pumps to a gasoline station. A change from a stable to a riding academy was disapproved, and a change from a use of a dwelling for sleeping rooms to use for combination units with cooking facilities was found unlawful, as was a change from a hotel to a home for retired persons.

The prudent businessman beginning his business on a particular piece of property must always ascertain whether the use which he proposes to conduct on the property is a permitted use. If the use is not permitted under the zoning ordinance, the businessman must determine by what right the business is being conducted on the property. If the right is asserted to be a grandfathered, nonconforming use. The businessman must ask himself, am I continuing the same use as my predecessor, such as the immediate successors to the Zirkles did when they tried to continue to operate a commercial garage on the property. If the use is not the same, the businessman must then determine whether his new use is a more limited or stepped down use permitted under the more intensive grandfathered use. *See* 83 Am. Jur. 2d, *Zoning and Planning*, §§ 654 and 657.

In this case, had Fawley entered the property without the intervening use by Thomas, he could have continued the private motor vehicle repair business on the premises as he is currently conducting it, but since Thomas's motor vehicle repair was only incidental to his principal use of the property to store and repair his carnival equipment, which was not a lawful use of the property, the continuity of the grandfathered, lawful, nonconforming use was broken for more than two years. The storage of carnival equipment and the parking of trucks and trailers on the property in the off season was not a lawful use of the property, since it was neither a permitted use or a grandfathered nonconforming use; therefore, the occasional repair of the trucks and trailers

used to transport the carnival equipment on the premises was not lawful, since it was a use incidental to an unlawful principal use of the property.

### III. *Decision*

For the foregoing reasons it is adjudged and ordered that Fawley's use of the property on Shenandoah Avenue in the Town of Mt. Jackson as a motor vehicle repair facility for his over the road transport business is an unlawful nonconforming use and must cease. The Town shall afford Mr. Fawley a reasonable time to wind down and close his operations on the property, which should not exceed six months from the date of this order.