RALPH J. WHITE, SR., ADMINISTRATOR OF THE ESTATE OF CATHERINE
B. WHITE, DECEASED v. WILLIAM R. HUNT, JR.

June 10, 1968.

Record No. 6689.

Present, All the Justices.

*Henry E. Howell, Jr.* (Stanley G. Barr, Jr.; *Howell, Anninos & Daugherty*, on brief), for plaintiff in error.

*J. Carroll Fears, Jr.* (Taylor, Gustin, Harris, Fears & Davis, on brief), for defendant in error.

Eggleston, C.J., delivered the opinion of the court.

Ralph J. White, Sr., administrator of the estate of Catherine B. White, deceased, brought an action against William R. Hunt, Jr., to recover damages for her wrongful death which resulted from an automobile collision at the intersection of East Princess Anne Road and Rush Street in the city of Norfolk. The motion alleged that at the time of the collision the decedent was a passenger in a car driven by her husband, Ralph J. White, Sr., and that the collision and death of the decedent were proximately caused by the negligence of the defendant Hunt, the driver of the other car. There was a trial before a jury which resulted in a verdict and judgment in favor of the defendant. We granted the plaintiff a writ of error.

On appeal the plaintiff contends that, the verdict and judgment are contrary to the law and the evidence in that the proximate cause of the collision was the negligence of the defendant; the lower court erred in its rulings on certain instructions, in permitting the tables of speed and stopping distances as set out in Code § 46.1-195 to be taken into the jury room at the defendant's request, and in excluding the proffered expert opinion testimony of a witness for the plaintiff as to the speed of the defendant's car at the time of the collision.

At the scene of the collision Princess Anne Road runs east and west and has two lanes of travel in each direction. The east- and westbound lanes, respectively, have a combined width of about 23 feet and are separated by a median strip approximately 20 feet wide. Rush Street runs north and south and is approximately 33 feet wide. There are stop signs for vehicles using Rush Street and crossing Princess Anne Road. The permitted speed limit at the intersection is 40 miles per hour.

On April 17, 1966, about 7:30 P. M., Mrs. White was a passenger in a Buick car which was being driven northwardly by her husband along Rush Street with the intent to cross Princess Anne Road. The streets were dry, it was dark, and the headlights on cars were burning. There was an overhead street light at the northwest corner of Rush and Princess Anne. Both White and Hunt were familiar with the intersection and frequently used it in going between their respective homes in the neighborhood and their places of business.

Obeying the stop sign at the intersection, White brought his car to a stop before entering Princess Anne Road. After allowing two or three eastbound vehicles to pass he proceeded through the intersection, cleared the eastbound lanes, continued past the median strip and started across the westbound lanes. When the front of his car reached the northern edge of Princess Anne Road its right rear fender was struck by the front of a Chevrolet car which was being driven westwardly by Hunt in the right-hand lane of Princess Anne Road. The force of the impact caused both vehicles to turn in circles and badly damaged them. Mrs. White was thrown out of her husband's car onto the pavement and killed instantly.

White testified that after stopping at the stop sign at the edge of Princess Anne Road to allow eastbound traffic to proceed, he drove into the median strip and looking to his right saw the lights of a car which he thought was opposite a church some 700 feet east of the intersection. Thinking that he had ample time to pass ahead of this approaching vehicle, he did not stop, and continued through the intersection at an estimated speed of from 10 to 15 miles per hour. After first observing the approaching car on his right he did not again look in that direction or see the vehicle. However, Mrs. White, the passenger, saw the car and just before the impact exclaimed, "Look out, it's going to hit us!"

Hunt testified that he was approaching the intersection in the right-hand westbound lane of Princess Anne Road at a speed of about 40 miles per hour; that when he was 80 to 85 feet from Rush Street he first observed the White car which was coming from behind the eastbound Princess Anne Road traffic into the median strip; that since the White car did not stop in the median strip, he, Hunt, did not have sufficient time to direct his course either to the right or the left, but in the effort to avoid the collision he quickly applied his brakes and his car skidded forward and struck the other vehicle. An examination showed that the Hunt car had skidded a distance of 58 feet to the point of impact.

We find the evidence sufficient to warrant the jury in finding that the negligence of White was the sole proximate cause of the collision. Under Hunt's testimony, which the jury have accepted as true, White attempted to cross the westbound lanes on Princess Anne Road ahead of the Hunt car when the latter was so close that Hunt was unable to avoid the collision. Moreover, the jury may have found that White's own testimony showed that he was negligent in that he did not see the approaching Hunt car which was in plain view, dangerously near, and was seen by his passenger.

We find none of the plaintiff's assignments of error well taken with respect to the lower court's rulings on the instructions. A portion of Instruction D-10 is claimed to be argumentative. Since no such objection was made in the lower court it should not be considered on appeal. Rule 1:8 of Rules of Court.

Instruction D-9 reads as follows: "The court instructs the jury that if you believe from the evidence that Mr. Hunt was in the exercise of ordinary care operating his vehicle upon East Princess Anne Road at the time of this accident then he had the right of way and *if* (*sic*) under such circumstances he had the right to assume that Mr. White would yield the right of way to him unless and until the contrary appeared or should have appeared to him."

This instruction is based on §§ 29-353 and 29-367 of the Code of the City of Norfolk which were offered in evidence. Section 29-353 reads as follows:

> "*Duty of driver crossing or entering designated streets.* The driver of every vehicle crossing or entering any of the streets designated in the sections of division 2 of this article, between the designated points shall immediately, before crossing or entering the same, bring such vehicle to a full stop and, upon crossing or entering the same, shall yield the right of way to vehicles approaching on such streets, except at intersections where automatic signals are installed."

Section 29-367 includes among the designated streets that portion of East Princess Anne Road where the collision occurred.

It is argued that if § 29-353 of the City Code, as interpreted by this instruction, gave Hunt the unqualified right of way at the intersection of Rush Street and the westbound lanes of Princess Anne Road, the ordinance is void because it is in conflict with § 46.1-221 of the Code of Virginia [Repl. Vol. 1958]. This latter section

provides, in substance, that where two vehicles approach or enter an intersection at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right unless a yield right of way sign is posted, and that the driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have under this section.

We do not agree with the contention that the ordinance is in conflict with the statute. In the first place, no such contention was made in the lower court and Rule 1:8 would preclude the consideration of the point on appeal. But aside from this, the ordinance is not in conflict with Code § 46.1-221. This latter section must be read in connection with § 46.1-173 which imposes on the driver of a motor vehicle the duty of complying with the requirements of road signs erected upon the authority of the State Highway Commission or by local authorities in cities and towns. Clearly, it was not the purpose of § 46.1-221 to lessen the duties of a motorist faced with a stop sign at an intersection or to add to those of the favored driver at such intersection. In short, we think the provisions of § 46.1-221 are not applicable at an intersection which is controlled by a stop sign erected pursuant to § 46.1-173, as was the case here. Consequently, Instruction D-9, which accorded the right of way to the Hunt vehicle under the stated circumstances, was correct.

Complaint is made of the action of the lower court in granting and refusing other instructions. We have carefully considered the rulings on each of these and find no prejudicial error in any of them.

■ Error is assigned to the action of the lower court in "giving to the jury to take into the jury room the tables of speeds and stopping distances set forth in Section 46.1-195 of the Code of Virginia, for the reason the defendant failed to establish the conditions that are a prerequisite to the tables being considered under any circumstances, namely, the defendant failed to show that the 1964 Chevrolet involved was in good condition and, as a matter of fact, the evidence showed that the brakes were defective in that they had a *disparite breaking* power; and, further, in view of the fact the evidence shows that the defendant's car was moving with great force at the time of the collision, the table would tend to confuse the jury in its use during their deliberations."

The circumstances under which these tables were offered in evidence and the plaintiff's objection thereto are shown in an order entered on the final day of the trial which recites, that "the defendant,

by and through his counsel, requested the court to submit to the jury the tables of speed and stopping distances set forth in 46.1-195, which request the court granted and at that time * * * counsel for the plaintiff noted his exceptions to the action of the court and stated that the defendant had failed to prove that the 1964 Chevrolet being driven by the defendant was in good condition and that said tables were not relevant to the case at bar."

It is thus apparent that the objections which the plaintiff now presses were not brought to the attention of the lower court and should not be considered on appeal. Rule 1:8. Moreover, it is not clear that permitting the jury to consider the tables was prejudicial to the plaintiff. If the jury accepted the testimony of Hunt that he approached the intersection at a speed of 40 miles per hour and was approximately 80 feet therefrom when the White car started across the westbound lanes of Princess Anne Road, they might have reasoned that the tables corroborated Hunt's testimony that he did not have sufficient time within which to stop his car and avoid the collision. On the other hand, had the jury adopted the testimony of White that the Hunt car was approximately 700 feet away when he started through the intersection they might have reasoned from the tables that Hunt had ample time within which to stop his car and avoid the collision. Thus in the latter aspect a consideration of the tables would be favorable and not prejudicial to the plaintiff. In any event, if there was any error in the admission of the tables it was harmless. *Beasley* v. *Bosschermuller*, 206 Va. 360, 366, 143 S. E. 2d 881, 886 (1965); *Shelton* v. *Mullins*, 207 Va. 17, 22, 147 S. E. 2d 754, 758 (1966).

While the point was not raised in the court below, we think that these tables should not have been offered in evidence, as was done here, without an appropriate instruction as to their relevancy, if any. *Cook* v. *Basnight*, 207 Va. 491, 496, 151 S. E. 2d 408, 411, 412 (1966).

The final assignment is to the action of the lower court in refusing to allow Sergeant Sidney E. Cherry, a member of the Norfolk Police Division, to answer this question: "Sergeant Cherry, based upon your 17 years experience in investigation of accidents and based upon the skid marks that you observed, the damage done to the automobiles, their position in the highway, what is your opinion regarding the speed of the Hunt automobile at the time of the accident?" On objection of the defendant the witness was not permitted to express such opinion.

There are two reasons why this assignment is not well taken. In the first place, the record does not indicate what the witness's answer to the question would have been. Burks Pleading and Practice, 4th Ed., § 303, p. 548. In the next place, assuming that the answer would have been favorable to the plaintiff, such expression of opinion was inadmissible because it would have invaded the province of the jury who were as capable as the witness of drawing a proper conclusion from the related physical facts. *Grasty* v. *Tanner*, 206 Va. 723, 726, 146 S. E. 2d 252, 254 (1966); *Venable* v. *Stockner*, 200 Va. 900, 904, 905, 108 S. E. 2d 380, 383, 384 (1959).

On the whole we find no prejudicial error in the rulings of the lower court and the judgment is

*Affirmed.*