Present:  All the Justices

RALPH L. PATTON, ET AL.
                                            OPINION BY
v.  Record Nos. 040616 & 040617  JUSTICE LAWRENCE L. KOONTZ, JR.
                                          March 3, 2005
CITY OF GALAX

            FROM THE CIRCUIT COURT OF GRAYSON COUNTY
                    J. Colin Campbell, Judge


     These appeals arise from companion equity and law cases
filed in the Circuit Court of Grayson County (the trial court)
in which the City of Galax maintained that Ralph L. and Frieda
Patton, husband and wife, are prohibited by its local zoning
ordinance from utilizing the first floor of the structure on
their property for residential apartments.  In the equity case,
the chancellor determined that the proposed use of the first
floor was not subject to the so-called "grandfathering"
provision in Galax City Code § 160-157 and issued an injunction
prohibiting the Pattons from making renovations to their
property for that proposed use.  In the law case, the trial
court reviewed and affirmed the decision of the local Board of
Zoning Appeals denying the Pattons' application for a
conditional use permit for the proposed residential use of the
first floor.  We awarded appeals to the Pattons to review both
actions of the trial court.

                          BACKGROUND

Under familiar principles of appellate review, we consider the evidence in the light most favorable to the City of Galax, the prevailing party in the trial court.  Matthews v. Board of Zoning Appeals, 218 Va. 270, 282, 237 S.E.2d 128, 135 (1977). Here, the evidence is provided by an appropriate statement of facts certified by the trial court in lieu of a transcript, Rule 5:11(c), and various trial exhibits.

The property in question is located at 201 South Main Street in the City of Galax.  Mr. Patton acquired the property in 1967 and thereafter transferred the title to himself and his wife jointly.  Subsequent to the Pattons' acquisition of the property, the City adopted a comprehensive zoning ordinance, placing the property in a Business General (B-2) District (the B-2 District).  "This district, containing the major downtown retailing center and major outlying commercial areas, provides a framework for a strong nucleus of the commercial community, in which each business can enhance other business and where all the amenities of downtown can be provided."  Galax City Code § 160-91.

"Apartment use" of structures in the B-2 District requires a conditional use permit.  Galax City Code § 160-93(E). Apartment use is not permitted on the first floor of any

structure in the B-2 District "fronting on designated streets."
Id.

At the time the Pattons acquired the property, the first floor of the structure was used principally for a drugstore. The record does not reflect when this use was discontinued, although the parties do not dispute that such is the case. The record also does not reflect the dimensions of the first floor or any significant details concerning its interior layout. However, it is not disputed that, both before and after the adoption of the City's zoning ordinance, portions of the first floor have been used for a woodworking shop, a beauty shop, and at times for residential rental rooms. It is also undisputed that the second floor of the structure has been in continual use for residential apartments.[*]

In 1997, the Pattons began renovations on the first floor of their property. The Pattons obtained a building permit to construct a bathroom on this floor. Subsequent renovations, including painting and the installation of fire retardant sheetrock over existing walls, were conducted without obtaining

---

[*] The parties refer to apartments and rental rooms interchangeably. The record establishes that individual rooms are rented for residential occupancy, with common bathrooms and a kitchen available for use by the occupants.

building permits.  The Pattons intended to use the first floor of their property for residential apartments.

On February 15, 2001, the Pattons were informed by Keith Barker, a building official for the City of Galax, that they were not permitted to use the first floor of their property for residential purposes without a conditional use permit and that no further building permits would issue for the ongoing renovation work until a conditional use permit was obtained.  On December 10, 2001, the City filed a bill of complaint in the trial court seeking an injunction prohibiting the Pattons from continuing to renovate the first floor of the property for residential use.

In their answer to the bill of complaint, the Pattons asserted that the property "has been in residential use continuously and at all times since the adoption of a zoning ordinance by the City of Galax, and that the residential use of the premises is grandfathered such that continuing residential use of the premises is not in violation of the zoning ordinance of the City of Galax."  On January 4, 2002, the chancellor issued a temporary injunction prohibiting the Pattons from conducting further renovation work on the property.  Following a hearing on the City's bill of complaint, the parties agreed to a continuance of the proceedings in order to permit the Pattons to

apply for a conditional use permit for residential apartments on the first floor street level of the property.

On March 7, 2002, the Pattons applied to the City of Galax for a conditional use permit to allow apartments on the first floor street level of the property.  Following a public hearing on April 25, 2002, the City of Galax Planning Commission denied the Pattons' application.  The Commission found that the proposed apartments would front on Main Street, which the Commission determined to be a "designated street[]" within the meaning of Galax City Code § 160-93(E).  After the Commission's action was confirmed by the Galax City Council, the Pattons filed an appeal with the City of Galax Board of Zoning Appeals. On June 25, 2002, the Board denied the Pattons' appeal, concurring in the determination of the Commission that the structure on the Pattons' property fronted on a designated street.

On July 17, 2002, the Pattons filed a notice of appeal in the trial court.  After issuing a writ of certiorari to the Board of Zoning Appeals, the trial court consolidated the appeal of the Board's decision with its consideration of the City's bill of complaint.  The trial court ruled that no additional evidence was needed in either case and directed the parties to

present their final arguments in written briefs.  Those briefs reflected the arguments the parties now make on appeal.

In an opinion letter dated August 8, 2003, the trial court ruled in the law case that the Board of Zoning Appeals properly construed the term "designated streets" to include all public streets within the B-2 District.  Referring to the City's zoning map, filed as an exhibit, the trial court noted that Main Street is color coded as being within the B-2 District.  Thus, the trial court concluded that the Board properly followed the ordinance in affirming the decision of the Planning Commission, as confirmed by the City Council, to deny the conditional use permit on the basis that the proposed apartments on the first floor of the structure on the Pattons' property would front on a designated street in violation of Galax City Code § 160-93(E).  The trial court further noted that the use of "the subject property . . . for first floor residential apartments was not in existence at the time that the zoning ordinance came into effect" and, thus, was not grandfathered for that use.

In a separate opinion letter in the equity case, also dated August 8, 2003 and referencing the letter opinion filed in the law case, the chancellor opined that the requested injunction should issue.  A final order and a final decree memorializing the rulings of the trial court as reflected in the opinion

letters were entered in the respective cases on December 19, 2003.

## DISCUSSION

It is self-evident that if the Pattons are entitled to use the first floor of the structure on their property for residential apartments as a prior nonconforming use grandfathered under the zoning ordinance, a conditional use permit for that same purpose would be unnecessary. Accordingly, we first consider the trial court's determination in the equity case that because the first floor of the structure was not being used for residential apartments at the time the zoning ordinance was adopted, only the second floor apartments are grandfathered.

Because the chancellor heard the evidence ore tenus, his decree is entitled to the same weight as a jury verdict. The Dunbar Group, LLC v. Tignor, 267 Va. 361, 366-67, 593 S.E.2d 216, 219 (2004); Shooting Point, L.L.C. v. Wescoat, 265 Va. 256, 264, 576 S.E.2d 497, 501 (2003). Thus, we will not reverse the determinations made by the chancellor unless they are plainly wrong or without support in the evidence. The Dunbar Group, 267 Va. at 367, 593 S.E.2d at 219 (2004); Shooting Point, L.L.C., 265 Va. at 264, 576 S.E.2d at 501.

It is the settled law of this Commonwealth that for a prior use of land that violates a newly enacted zoning restriction to

7

be considered a lawful nonconforming use, the use must have been " 'a lawful use existing on the effective date of the zoning restriction.' " C. & C. Inc. v. Semple, 207 Va. 438, 439 n.1, 150 S.E.2d 536, 537 n.1 (1966) (quoting 2 E. C. Yokley, Zoning Law and Practice § 16-2, at 212 (3rd ed. 1965)), see also Knowlton v. Browning-Ferris Industries of Virginia, Inc., 220 Va. 571, 572 n.1, 260 S.E.2d 232, 234 n.1 (1979). "In a civil action in which a use is challenged as illegal, the challenging party has the initial burden of producing evidence to show the uses permitted in the zoning district in which the land is located and that the use of the land is not a permitted use. Upon this showing, the burden shifts to the landowner to show that his use is a lawful nonconforming use." Masterson v. Board of Zoning Appeals, 233 Va. 37, 47, 353 S.E.2d 727, 734 (1987); see also Knowlton, 220 Va. at 574, 260 S.E.2d at 235.

With respect to nonconforming uses in existence at the time the zoning ordinance applicable here was adopted, Galax City Code § 160-157 provides, in relevant part, that:

> A. Intent. Within the districts established by this chapter or amendments that may later be adopted, there may exist structures and uses of land and buildings which would be prohibited, regulated or restricted under the terms of this chapter or future amendments. It is the intent of this chapter to permit these nonconforming uses and structures to continue until they are removed but not to encourage their survival. It is further the intent of this

8

chapter that these nonconforming structures and uses shall not be enlarged upon, expanded or extended.

. . . .

D. Nonconforming uses of structures or of structures and premises in combination.  If a lawful use involving individual structures with a replacement cost of one thousand dollars ($1,000.) or more or if a structure and premises in combination exists at the effective date of adoption or amendment of this chapter that would not be allowed in the district under the terms of this chapter, the lawful use may be continued so long as it remains otherwise lawful, subject to the following provisions:

. . . .

(2) Any nonconforming use may be extended throughout any parts of a building which were manifestly arranged or designed for such use at the time of adoption or amendment of this chapter, but no such use shall be extended to occupy any land outside such building.

. . . .

E. Repairs and maintenance.  Nothing in this chapter shall prevent the making of ordinary repairs on a nonconforming structure or a structure containing a nonconforming use, provided that the structure is not enlarged in size.

Prior to the City's adoption of its zoning ordinance, it is unquestioned that the entire structure on the Pattons' property could have been lawfully used for residential apartments without distinction as to whether that use was maintained throughout the structure, or only in part of it.  It is also unquestioned that, upon adoption of the zoning ordinance, use of any structure in the B-2 District for residential apartments is not a permitted

9

use under Galax City Code § 160-92 and that such residential apartments may qualify as a lawful conditional use upon compliance with the specifications and requirements of Galax City Code § 160-93.  The City established that the Pattons did not have a conditional use permit for apartments on the first floor of their property.  Accordingly, the City met its initial burden of proof by showing that the proposed use of the first floor of the structure on the Pattons' property for apartments is not a permitted use under the zoning ordinance.  Thus, the burden shifted to the Pattons in the equity case to show that the use of the first floor of their property for apartments is a grandfathered prior nonconforming use.  Masterson, 233 Va. at 47, 353 S.E.2d at 734.

The Pattons contend, as they did before the chancellor, that pursuant to Galax City Code § 160-157(D), use of the structure on their property for residential apartments is a permitted nonconforming use because the second floor has been continually used for residential apartments since before the ordinance was adopted.  We agree that the Pattons established by clear evidence that the use of the second floor of their property for residential apartments is a permitted nonconforming use grandfathered under the zoning ordinance.  The Pattons further contend that under subsection (D)(2) they are permitted

10

to extend this residential use to the first floor because its occasional prior use for residential apartments demonstrates that it was "manifestly arranged or designed for such use at the time of adoption" of the zoning ordinance. Continuing, the Pattons maintain that the intended renovation of the first floor would not enlarge or alter the arrangement or the design of the structure and, thus, would be consistent with the provisions of subsection (E). We disagree.

We have not previously had the opportunity to address a claim that a use established in one part but not all of a building prior to enactment of a zoning ordinance constitutes a grandfathered right to extend the nonconforming use throughout the building. However, other jurisdictions that have considered this issue have held that the right to continue the nonconforming use does not extend to other areas of the building unless, at the time the ordinance was enacted, the design of the building clearly indicated that such use was intended throughout. See, e.g., Condor, Inc. v. City of North Charleston, 380 S.E.2d 628, 629 (S.C. Ct. App. 1989); Keller v. City of Bellingham, 600 P.2d 1276, 1280 (Wash. 1979). Moreover, in enacting the zoning ordinance, the government may expressly restrict the manner in which a nonconforming use can be extended throughout an entire building, see, e.g., Price v. Ackmann, 102

11

N.E.2d 194, 195 (Ill. Ct. App. 1951), or expressly prohibit extension of the use. See, e.g., Phillips v. Zoning Commissioner of Howard County, 169 A.2d 410, 413-14 (Md. 1961).

Thus, rather than treating a prior nonconforming use in one part of a building as permitting extension of the use to the whole building as a matter of right, it is generally held that the government may establish the manner in which extension of the use will be permitted, if at all. This principle is in accord with "the spirit underlying zoning regulations[, which] is to restrict rather than increase nonconforming uses." Id. at 414. The clear intent of Galax City Code § 160-157(D)(2) is to limit the expansion of a prior nonconforming use of part of a building, and the burden was on the Pattons to show that their extension comported with the requirements of that ordinance.

In order to extend the use of the second floor for residential apartments to the first floor, it was not sufficient for the Pattons to show that the intended renovations of the first floor will not alter the manner in which the first floor is arranged or designed. Rather, they were required to prove that the first floor was "arranged or designed for such use at the time of adoption or amendment of" the zoning ordinance. Because the record does not contain an adequate description of the interior layout of the first floor, we cannot state with any

12

certainty what its arrangement and design might be.  However, because it is undisputed that the first floor has been used principally for commercial retail purposes, the chancellor's determination that the first floor was not subject to grandfathering for use as residential apartments is not plainly wrong or without support in the evidence.  Accordingly, we hold that the chancellor did not err in awarding the injunction against the Pattons to prohibit them from using the first floor of the structure on their property for residential apartments without a conditional use permit.

We now turn to the question from the law case whether the trial court erred in affirming the decision of the Board of Zoning Appeals to deny the Pattons a conditional use permit for residential apartments on the first floor of the structure on their property on the ground that the structure fronted on a "designated street[]" as contemplated by Galax City Code § 160-93(E).  "[T]he decision of a board of zoning appeals 'is presumed to be correct and can be reversed or modified only if the trial court determines that the BZA applied erroneous principles of law or was plainly wrong and in violation of the purposes and intent of the zoning ordinance' and 'the party challenging the BZA's decision has the burden of proof on these issues.' "  Higgs v. Kirkbride, 258 Va. 567, 573, 522 S.E.2d

13

861, 864 (1999) (quoting Foster v. Geller, 248 Va. 563, 566, 449 S.E.2d 802, 804-05 (1994)); see also Board of Zoning Appeals v. Bond, 225 Va. 177, 179-80, 300 S.E.2d 781, 782 (1983). Similarly, a trial court decision affirming a board of zoning appeals determination is also accorded this presumption of correctness on appeal to this Court. Masterson, 233 Va. at 44, 353 S.E.2d at 732-33; Natrella v. Board of Zoning Appeals, 231 Va. 451, 456, 345 S.E.2d 295, 299 (1986).

The parties agree that, pursuant to Galax City Code § 160-93(E), first floor apartments that do not front on designated streets are a permitted conditional use in the B-2 District. They disagree over the meaning of the term "designated streets." The Pattons contend that the term means those streets specifically designated by the Galax City Council for exclusion of first floor apartments rather than all streets shown on the City's zoning map lying within the B-2 District. Because the City has not designated any individual streets either in the zoning ordinance or on the zoning map for the purpose of excluding first floor apartments, they contend that denial of the conditional use permit by the Board of Zoning Appeals was in error and that the trial court erred in affirming that decision. The City responds that "designated streets" are the public streets within the B-2 District shown on the City's zoning map.

14

Thus, the City contends that the conditional use permit at issue here was properly denied based on the determination that the Pattons' proposed apartments on the first floor of their property would front on Main Street, a public street shown on the zoning map to be within the B-2 District.

Admittedly, Galax City Code § 160-93(E) is not a model of clarity.  However, "[z]oning laws should be given a fair and reasonable construction in the light of the manifest intent of the legislative body enacting them, the object sought to be attained, the natural import of the words used in common and accepted usage, the setting in which such words are employed, and the general structure of the ordinance as a whole." Mooreland v. Young, 197 Va. 771, 775, 91 S.E.2d 438, 441 (1956)); see also Lawrence Transfer & Storage Corp. v. Board of Zoning Appeals, 229 Va. 568, 571, 331 S.E.2d 460, 462 (1985); Citizens Association v. Schumann, 201 Va. 36, 40, 109 S.E.2d 139, 141 (1959).  Applying this standard, we hold that the term "designated streets" in Galax City Code § 160-93(E) denotes those public streets shown on the City's zoning map as being within the B-2 District.

Clearly, the object of the creation of the B-2 District is to establish a "nucleus" or center for commercial and retail trade in the downtown and major outlying commercial areas of the

15

City.  Galax City Code § 160-91.  The legislative intent of the City in creating this district manifestly was to promote the mutual enhancement of businesses within the district by their proximity to one another.  In this context, residential apartments on the first floors of structures fronting on the streets in this district do not comport with that intent.  Moreover, the City's zoning map clearly indicates that the streets within the B-2 District are part of the district.  Accordingly, we hold that the trial court did not err in affirming the decision of the Board of Zoning Appeals denying the Pattons a conditional use permit to use the first floor of the structure on their property for residential apartments on the ground that the proposed apartments would front on a designated street in violation of Galax City Code § 160-93.

CONCLUSION

For these reasons, we will affirm the judgment of the trial court in both cases.

*Affirmed*.

JUSTICE AGEE, with whom JUSTICE KINSER and JUSTICE LEMONS join, concurring in part and dissenting in part.

I agree with the majority opinion affirming the trial court's judgment in the equity case that the Pattons' proposed use of the first floor for residential apartments was not a

16

prior nonconforming use grandfathered under the applicable zoning ordinance. However, I write separately because I respectfully disagree with the majority opinion in the law case construing the term "designated streets" under Galax City Code § 160-93 so as to affirm the Board of Zoning Appeals' denial of the Pattons' application for a conditional use permit.

The majority holds that the term "designated streets" in the zoning ordinance denotes "those public streets shown on the City's zoning map as being within the [business] district." Based on the plain language of the ordinance and established principles of statutory construction, I cannot agree and therefore respectfully dissent.

The record reflects that the sole reason the Pattons' conditional use permit was denied by the Board of Zoning Appeals was that "the apartments did front on a designated street." The trial court reiterated this basis in its letter opinion. However, the agreed statement of facts confirms "there was no list of streets" and "no 'designated streets' shown upon the zoning map for the City of Galax." The record is devoid of any evidence that the City of Galax has ever designated any street as a "designated street" under Galax City Code § 160-93 or any other provision of the City Code.

17

The majority bases its reading of the term "designated streets" on the City's perceived intent in creating the B-2 business district. However, "[t]he purpose and intent of the ordinance should be considered but the ordinance should not be extended by interpretation or construction beyond its intended purpose." Donovan v. Board of Zoning Appeals, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996) (citation omitted). Rather, "the interpretation of a zoning ordinance is controlled by the principle that words in common use must be given their plain and natural meaning in the absence of any showing that such words were used in any other than their usual and ordinary sense." McClung v. County of Henrico, 200 Va. 870, 875, 108 S.E.2d 513, 516 (1959) (citations omitted).

"Street" as a term, refers to a large class of roadways, not specific, named thoroughfares. A street is a road or way over land set apart for public use and travel in a city or town. Norfolk City v. Chamberlaine, 70 Va. (29 Gratt.) 534, 537-38 (1877). The word "street" is all-inclusive and embraces both that portion of the highway set apart for vehicular traffic and that part set aside for pedestrians, including the sidewalk. Messick v. Barham, 194 Va. 382, 387-88, 73 S.E.2d 530, 533 (1952). City ordinances have also used the singular word "street" when referring to all "public thoroughfare[s]." See

18

*City of Staunton v. Cash*, 220 Va. 742, 745, 263 S.E.2d 45, 47 (1980).

In the ordinance at issue here, the general term, "street," is qualified by the specific, modifying term, "designated." "[W]hen general words and specific words are grouped together, the general words are limited and qualified by the specific words and will be construed to embrace only objects similar in nature to those objects identified by the specific words." *Commonwealth v. United Airlines, Inc.*, 219 Va. 374, 389, 248 S.E.2d 124, 132-33 (1978) (citations omitted).

The term "designate" means "[t]o indicate, select, appoint, nominate, or set apart for a purpose or duty" or "[t]o mark out and make known; to point out; to name; indicate." Black's Law Dictionary 447 (6th ed. 1990). In the Code of Virginia and the decisions of this Court, the adjective, "designated," is often applied to the general term, "streets," to specify particular thoroughfares. See Code § 15.2-942 (empowering localities to restrict traffic on designated streets during historical reenactment events) (emphasis added); Code § 46.2-1304 (empowering localities to prohibit the use of trucks on certain designated streets) (emphasis added). See also *Carolina Coach Co. v. City of Norfolk*, 202 Va. 322, 326, 117 S.E.2d 131, 135

(1960) (applying Code § 46.1-181, predecessor statute to Code § 46.2-1304).

The term "designated streets" has been used in this specific sense in ordinances of other Virginia localities. White v. Hunt, 209 Va. 11, 14, 161 S.E.2d 809, 812 (1968), examined a provision of the Norfolk City Code that outlined the "[d]uty of a driver crossing or entering designated streets." A subsequent provision named those designated streets. Id. A Falls Church city ordinance provided that historical preservation regulations apply to "designated structures." Cook v. Board of Zoning Appeals, 244 Va. 107, 109, 418 S.E.2d 879, 880 (1992). A subpart of the ordinance required that such structures be listed in a city register. Id.

"Designated streets" is not a defined term in the Code of the City of Galax. We must, therefore, adopt the meaning evident by the plain language of the ordinance. See Chappell v. Perkins, 266 Va. 413, 420, 587 S.E.2d 584, 588 (2003). With regard to the City Code's provision permitting apartment use on "the first floor not fronting on designated streets," as a conditional use, the plain meaning of the phrase "designated streets" must be those streets pointed out, named or indicated by the City. As noted above, the record is devoid of any

evidence the City has done so as to South Main Street, or any other street.

The effect of the majority's decision is to effectively rewrite Galax City Code § 160-93(E) from its current provision[1] to read "[a]partment use, both on the second floor and the first floor not fronting on streets in the Business General district." Had the Galax City Council wished to adopt such an ordinance it could have done so, but did not. While City Council may elect to amend its zoning ordinances, that power is not within the province of the judiciary. Courts cannot add language to an ordinance that the drafters have not seen fit to include. See Holsapple v. Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003). "[N]or are they permitted to accomplish the same result by judicial interpretation." Burlile v. Commonwealth, 261 Va. 501, 511, 544 S.E.2d 360, 365 (2001) (internal quotation marks omitted).

The only stated basis for the decision of the Board of Zoning Appeals denying the conditional use permit is that the Pattons' building was on a designated street. While I recognize

---

[1] Galax City Code § 160-93 reads as follows: Conditional uses in the Business General (B-2) District shall be permitted following a public hearing and approval . . . Conditional uses shall be one (1) or more of the following uses: . . . E. Apartment use, both on the second floor and the first floor not fronting on designated streets.

21

that the decision of the Board of Zoning Appeals is presumed to be correct, Masterson v. Board of Zoning Appeals, 233 Va. 37, 44, 353 S.E.2d 727, 733 (1987), nevertheless, "if the administrative interpretation of a portion of an ordinance is so at odds with the plain language . . . , such interpretation is plainly wrong, and must be reversed." Cook v. Board of Zoning Appeals, 244 Va. 107, 111, 418 S.E.2d 879, 881 (1992). The plain language of the ordinance requires the City to name, in some way, the particular streets within the zoning district where the first floor apartments fronting on that street do not qualify for a conditional use permit. Nothing in the record supports a finding that this ever occurred.

The decision of the Board of Zoning Appeals was thus plainly wrong and so is the judgment of the trial court affirming it. Accordingly, I would reverse the judgment of the trial court in the law case.