# CIRCUIT COURT OF SMYTH COUNTY

Michael Heath

    v.

Board of Zoning Appeals
of the Town of Chilhowie,
Aaron Powell,
and Erin Powell

June 4, 2014

Case No. CL13-697

By Judge Deanis L. Simmons

The Court has considered the record of this case, including but not limited to, the pleadings, exhibits, arguments, and case law submitted herein. After a careful review of the record of the case and the aforesaid, for the reasons expressed in the petitioner's memoranda, and the reasons recited herein, the Court finds and rules as follows.

## Introduction

Petitioner, Michael Heath, brings this appeal and requests that this Court reverse the Board of Zoning Appeals' decision to reverse the Zoning Administrator's grant of a zoning permit to develop a mobile home park. Petitioner asserts that the Board of Zoning Appeals (hereinafter "BZA" or "Board") applied erroneous principles of law, was plainly wrong, was in violation of the purpose and intent of the Zoning Ordinance, was unreasonable, arbitrary and capricious, and was not supported by the record. After reviewing the record of the case, including, but not limited to, the submitted memoranda of law, the meeting minutes, and exhibits filed with the Court, the Court finds that, with respect to the pertinent legal issues, the Board did apply erroneous principles of law and its decision was not supported by the record. Accordingly, the Court reverses the Board's decision and remands the case to the Chilhowie Board of Zoning Appeals for further proceedings as required hereby.

## Statement of Facts

On February 15, 2012, petitioner purchased two tracts of property in the Town of Chilhowie, Lot No. 53D2-A-12. (Pet. ¶ 1.) The property was zoned R-2, residential-general, under Chilhowie Town Zoning Code (hereinafter "Zoning Code") § 3.2 and comprised a mobile home park, known as Rainbow Village West End. (Pet. ¶¶ 1, 3.) The parties disagree as to the number of mobile homes that were located on the property at the time of petitioner's purchase. Petitioner claims there were six homes, though he acknowledges that the zoning permit application listed only five addresses. (Pet.'s Memo. in Support of App. 2.) The Board of Zoning Appeals appears to have relied on statements alleging that there were only three mobile homes located on the property. (*See, e.g.*, Cindy Testerman, Meeting Minutes, 232 (March 26, 2013).) Petitioner asserts that he purchased the property in order to update the premises and continue to operate a mobile home park. (Pet. ¶ 7.)

Petitioner applied for a zoning permit on June 6, 2012. The Town Manager did not issue a permit at this time. (Pet.'s Memo. in Support of App. 2.) Petitioner submitted revised applications on October 1 and October 9, 2012. (*Id.*) The Town Manager denied these applications on November 5, 2012, on the basis that the drawings did not meet the ten-foot setbacks. (*Id.*) There is an arguable issue as to whether petitioner can be

required to meet these setback requirements if the mobile home park is a nonconforming use and the mobile homes are nonconforming structures. Nevertheless, petitioner agreed to accommodate these requests. On January 3, 2013, petitioner submitted a revised application showing the requested setbacks and the Town Manager granted the application. (*Id.* at 3.) Aaron and Erin Powell, adjacent property owners, appealed the Town Manager's decision to the BZA. (*Id.*) The BZA held hearings on March 26 and April 9, 2013, and voted two-to-one to repeal the permit.

## Standard of Review

On appeal, the circuit court presumes that the decision of the Board of Zoning Appeals is correct and the appealing party bears the burden to rebut this presumption. *Masterson v. Board of Zoning Appeals,* 233 Va. 37, 44, 353 S.E.2d 727 (1987). The circuit court reviews questions of law *de novo* on appeal and will only overturn the Board's decision if the appealing party proves that the Board applied erroneous principles of law, that its decision was plainly wrong, or that the decision was made in violation of the purpose and intent of the zoning ordinance. *Board of Supervisors v. Board of Zoning Appeals,* 271 Va. 336, 348-49, 626 S.E.2d 374 (2006). If the question is one of sufficiency of the record to prove a particular fact, the appealing party may rebut the presumption of correctness and the court must apply a preponderance of the evidence standard to determine if the deciding body "erred in its decision." *Id.*; at 348; *Adams Outdoor Advertising, L.P. v. Board of Zoning Appeals of the City of Virginia Beach,* 274 Va. 189, 195, 645 S.E.2d 271 (2007).

Absent specific language to the contrary, a statutory grant of appellate jurisdiction to a circuit court implies a power to remand the case to the administrative body whose decision the court is reviewing on appeal. *Jones v. Willard,* 224 Va. 602, 606-07, 299 S.E.2d 504 (1983); *see also Hoyle v. Virginia Emp't Comm'n,* 24 Va. App. 533, 537, 484 S.E.2d 132 (1997). Pursuant to Code § 15.2-2314, a circuit court may, upon appeal of a decision of a board of zoning appeals, "reverse or affirm, wholly or partly, or may modify the decision brought up for review." It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points. *Willard,* 224 Va. at 607 (quoting *Ford Motor Co. v. Labor Bd.,* 305 U.S. 364, 373, 59 S. Ct. 301, 83 L. Ed. 221 (1939) (footnotes omitted)).

*Analysis*

The following analysis addresses the various arguments presented in the memoranda and those presented at the Board of Zoning Appeals' meetings on March 26 and April 9, 2013. The arguments are discussed in the context of the Virginia Code and the Chilhowie Town Zoning Code, as well as relevant case law as applicable. The Court first addresses the record with regard to whether the subject property was an existing nonconforming use. Secondly, the Court addresses the record and determines it was insufficient to establish that the nonconforming use was discontinued or abandoned for more than two years. Thirdly, the Court addresses the record regarding the establishment of subject property as a mobile home park, and whether the mobile homes located therein continue to enjoy their status as nonconforming uses and structures in accordance with the relevant statutes. Within this third aspect of analysis, the Court addresses whether the mobile homes were expanded, enlarged, removed, or destroyed, and in particular, addresses the replacement of the mobile homes and why the act of replacing the structures is permissible and distinct from other alleged acts that would not be permitted under the applicable code sections.

A. *Whether the Subject Properly Used as a Mobile Home Park Is an Existing Nonconforming Use*

"[F]or a prior use of land that violates a newly enacted zoning restriction *to be considered a lawful nonconforming use,* the use must have been a lawful use existing on the effective date of the zoning restriction." *Patton v. City of Galax,* 269 Va. 219, 225, 609 S.E.2d 41 (2005) (emphasis added); *Town of Front Royal v. Martin Media,* 261 Va. 287, 293, 542 S.E.2d 373 (2001). In a civil action in which a use of property is challenged as being illegal, the *challenging party* has the initial burden of producing evidence to show the uses permitted in the zoning district in which the land is located and that the use of the land is not a permitted use. Upon this showing, the burden shifts to the landowner to show that his use is a lawful nonconforming use. Therefore, the party seeking to challenge the nonconforming use of the property as an illegal use, "would carry the initial burden of producing evidence to show . . . that the use of the land is not a permitted use; the burden then shifts to the landowner to establish that the use is a lawful nonconforming use." *Board of Supervisors,* 271 Va. at 349, 626 S.E.2d 374.

From the record before this Court, it does not appear that the petitioner was provided adequate notice of this challenge or given adequate opportunity to prepare and address such a challenge. The record before this Court shows much confusion and misunderstanding by all present as to what the issues were before the Board. Upon this record, it appears to this Court that there is an overriding constitutional due process issue that presents itself. Zoning, like condemnation, involves a taking of property

rights and interests; therefore, the Fourteenth Amendment applies. See *Arnett v. Kennedy*, 416 U.S. 134, 164-65, 40 L. Ed. 2d 15, 39, 94 S. Ct. 1633, 1649-50 (1974). Regardless of what was ultimately determined to be the applicable language of the relevant ordinances or the rules of procedure, the petitioner was entitled to effective and adequate notice as to specifically what the issues were regarding the challenge to whether his requested permit for use of the subject property constituted a valid nonconforming use. He was additionally entitled to an adequate opportunity to be heard on those respective issues. The facts herein show that his permit had been granted at one point and that he believed the primary issue to be one of setback. Since property rights are involved, both of the petitioner as the applying property owner and of the Powells as objecting adjacent property owners, it is imperative that due process is afforded to all those before the BZA. From this record, it cannot be determined that due process requirements were satisfied.

B. *Whether the Mobile Home Park Continues To Enjoy Its Status as a Nonconforming Use Because Such Use Was Not Abandoned or Discontinued for More Than Two Years*

Should the subject property's use as a mobile home park be found to be a valid nonconforming use, the issue then becomes whether the nonconforming use was "discontinued" for a period of more than two years. *See V*a. Code § 15.2-2307; Zoning Code§ 1.11. Zoning Code § 1.11 states that a use must not be "discontinued for more than one year in situations not involving a structure or two years where a nonconforming building is involved." Thus the applicable period of time in this case is two years.

The BZA and the Powells argue that the BZA was "justified in determining that the lot had not been used for trailers for two years in view of the evidence that it had not been so used since 2006"; yet, in support of this claim, there were only unverified, conclusory statements made at a BZA meeting. (*See* Rick Money, Meeting Minutes, 218 (March 26, 2013) (stating that the "physical structures were there, but the use was discontinued"); Marlene Henderson, Meeting Minutes, 225 (discussing generally, "an abandoned property"); Stephen Marion, Meeting Minutes, 227 (March 26, 2013) ("I know since I came here there have not been consistently mobile homes there."); Mary Ratliff, Meeting Minutes, 231 (March 26, 2013) ("It was already abandoned.").) No evidence was provided in support of these statements. Moreover, there is no reference to the length of time the use was allegedly "discontinued" or the property "abandoned." The Board referenced statements by town members stating that there were only three mobile homes on the property, that the property was abandoned, and that the use had been discontinued in 2006, but these statements were not substantiated by any objective evidence nor were the petitioners given an opportunity to respond. Indeed, at this point, so many

issues, some pertinent and others not, were being presented and stated to the Board, there is no indication that the petitioner knew or was adequately given notice as to what the issues regarding his application for permit were. At one point, the petitioner's attorney stated at the March 26, 2013, public hearing: "If ten feet is the problem, I would tell them [meaning presumably the petitioner] to comply and be done with it"; implying, thereby, petitioner still believed the issue to be one of setback requirements. (*See also* Pet. Reply to Powell Memo., 6-7.)

The record before this Court evidences only an apparent reliance on these conclusory statements, without consideration of evidence and without providing the petitioner an adequate opportunity to rebut or address such statements. In contrast, the deed by which the property was conveyed to petitioner, Michael Heath, on February 15, 2012, recites that this property contained six mobile homes. (Exhibit "Deeds" at 13.)

At this juncture, it should be noted that cases dealing with the right to resume a nonconforming use after business, structural problems, or other external difficulties causing an involuntary break in the continuity of nonconforming use often state "in effect, that a mere factual cessation of use, without more (that is, absent an intent to abandon), will not constitute a legal abandonment [discontinuance] of the nonconforming use." Douglas Hale Gross, Annotation, *Zoning,* 56 A.L.R. 3d 14, at 35 (footnote omitted); *e.g., People, ex rel. Trebat v. Park Ridge,* 110 Ill. App. 2d 404, 249 N.E.2d 681, 686-87 (Ill. App. 1969) (requiring more than mere cessation of use); *Dobbs v. Board of Appeals,* 339 Mass. 684, 162 N.E.2d 32, 33-34 (Mass. 1959) (finding non-occupancy of premises is not of itself a discontinuance); *Campbell v. Board of Adjustment,* 118 N.J.L. 116, 191 A. 742, 742-43 (N.J. 1937) (finding the temporary inability to carry on a nonconforming use does not cause a loss of the right to exercise it); *Haulenbeek v. Allenhurst,* 136 N.J.L. 557, 57 A.2d 52, 53 (N.J. 1948) (finding interruption for lack of demand, inability to get a tenant, and financial difficulty do not result in abandonment); *Highland Park v. Marshall,* 235 S.W.2d 658, 664 (Tex. Civ. App. 1950) (finding lack of demand, inability to get a tenant, or financial difficulties leaving a property vacant do not result in abandonment); *State, ex rel. Schaetz v. Manders,* 206 Wis. 121, 238 N.W. 835, 837 (Wis. 1931) (stating discontinuance cannot mean a temporary non-occupancy of a building); *accord, Ullman, ex rel. Eramo v. Payne,* 127 Conn. 239, 16 A.2d 286, 287 (Conn. 1940) (stating discontinuance does not mean mere temporary suspension for a reasonable time); *Darien v. Webb,* 115 Conn. 581, 162 A. 690, 692 (Conn. 1932) (stating in dictum that a temporary non-occupancy of the premises would not work a termination); *McCoy v. Knoxville,* 41 Ill. App. 2d 378, 190 N.E.2d 622, 625 (Ill. App. 1960) (looking to the efforts of the owner to rent or sell the property for a nonconforming use to find no intent to abandon); *Bowling Green v. Miller,* 335 S.W.2d 893, 894 (Ky. 1960) (finding discontinued, in legal sense, means more than

mere suspension of a nonconforming use). Although this Court is not bound to follow other states' courts, this Court finds it persuasive that the vast majority of states that have addressed this issue have found that some action is required on the part of the landowner before a nonconformity exemption is lost, as opposed to mere lack of occupancy or use. *See Zoning,* 56 A.L.R. 3d 14, at 35-42 (stating that action is required for abandonment in most states which have considered the issue).

On the record before it, this Court finds that the issue of "abandonment" of a nonconforming use was neither properly noticed to the petitioner prior to the hearing nor properly addressed by the Board. From the record before this Court, it appears that petitioner was proceeding on the understanding that the issues before the BZA consisted of whether the petitioner should be required to comply with setback provisions which morphed into a discussion of whether the footprint of the new mobile homes on the subject property constituted an unlawful expansion of the nonconforming use. The Court finds the Board applied erroneous principles of law and violated the purpose and intent of the zoning ordinance, which warrants a reversal of the decision of the Board and a remand of the matter to the Board for further consideration in conformance with the applicable laws.

Accordingly, this Court remands this issue to the Board for the taking of further evidence and consideration of such evidence as to whether the subject property was a lawful nonconforming use and, if so, whether it was legally "abandoned" within the context of applicable law.

*C. Whether the "Mobile Home Park," and Mobile Homes Located Therein Continue To Enjoy Their Status as Nonconforming Uses and Structures in Accordance with Virginia Code § 15.2-2307 and Zoning Codes §§ 4.16 & 4.22*

The BZA and the Powells assert that "because the old mobile home structures were removed, they no longer qualified as a protected nonconforming use." (BZA Memo., 4; Powell Memo., 5.) In support of this position, they cite Zoning Code § 4.16-2(c), which states that "should such structure be moved for any reason for any distance it should thereafter conform to the regulations for the *district in which it is located after it is moved.*" (Emphasis added.) (*See also* Aaron Powell, Meeting Minutes, 223 (March 26, 2013).) This particular subsection appears to address the treatment of a particular nonconforming structure in a new location, should it be moved, in such new location. However, Mr. Heath does not seek a permit to move the old nonconforming homes to another location, nor does he seek to move onto the property a structure that previously enjoyed nonconforming status at another location. Accordingly, the Court does not find this provision to be applicable to the circumstances of this subject property. (*See also* Pet. Reply to Powell Memo., 5-6.)

The Powells cite generally to Zoning Code § 4.16-1, which states that "nonconforming uses and structures [should be permitted] to continue until they are removed . . . [and] these nonconforming uses and structures shall not be enlarged upon, expanded, or extended." (Powell Memo., 8; Aaron Powell, Meeting Minutes, 223 (March 26, 2013); Meeting Minutes, 236 (April 9, 2013).) Although this language is in accord with Virginia Code § 15.2-2307, the parties fail to recognize the more specific provisions in Code § 15.2-2307 regarding mobile homes, which states, as follows:

> Nothing in this section *shall* be construed to prevent the land owner . . . from removing a valid nonconforming manufactured home from a mobile or manufactured home park and *replacing* that home with another *comparable* manufactured home that meets the current HUD manufactured housing code.

(Emphasis added.) "It is well established law in Virginia that, '[w]hen one [Zoning] Code provision addresses a subject in a general way and another deals with a part of the same subject in a more specific manner, the two provisions should be harmonized, if possible, and where they conflict, the more specific provision prevails.'" (Pet. Reply to Powell Memo., 3 (citing *Capelle v. Orange Cnty.*, 269 Va. 60, 65, 607 S.E.2d 103 (2005)).) The record of this case does not evidence that the BZA was advised as to this provision or considered this in its decision.

Similar language can be found in Zoning Code § 4.22, which states that "[n]onconforming mobile homes may be replaced within 30 days, provided they meet setback and yard regulations." This thirty-day restriction is narrower than the Virginia Code, but still consistent with it. The Powells claim that replacing the existing mobile homes with units of increased size constitutes "enlarging the structures." The Virginia Code makes no reference to the relative size of the replacement, but explains that a "comparable" replacement is based on whether the home is a single-section or multi-section home. Va. Code § 15.2-2307. In this case, the petitioner replaced the existing homes with a newer model, but still single-section homes. The fact that the newer model is somewhat larger than the old could still be considered "comparable" according to the plain language of the statute.

Although, the latter part of Zoning Code § 4.22, stating that the replacement mobile home must "meet setback and yard regulations" may be applicable, Zoning Code § 4.22-1(i) exempts preexisting mobile home parks from the requirements of Zoning Code §§ 4.22-1 and 4.22-2. Read in conjunction with Virginia Code § 15.2-2307, cited above, a logical conclusion is if the mobile home parks are exempt from the requirements in the named sections, then any mobile homes contained in such parks should also be exempt from the requirements, including the setback and yard regulations.

The Powells, through their counsel, first acknowledge that "existing mobile home parks are exempt from § 4.22-1 and § 4.22-2," but then take issue with the fact that there were, in their opinion, additions to the park given the new homes coming in. (*Id.*) The Powells' counsel goes on to question (despite having previously referred to the subject property as a "mobile home park") whether the subject property is actually a mobile home park, referencing Zoning Code § 4.22-4. (*Id.*) Zoning Code § 4.22-4, is titled "The mobile home park plan." This argument is unpersuasive to this Court's review as it deals with the requirements of an application for a mobile home park. Moreover, the Powells' reference to the replacement mobile homes as new additions appears legally inconsistent with the applicable statutes. By definition, there is no "addition" to the park when there were previously six mobile homes on the property, and the record is devoid of evidence of any additions to that number. This Court finds that replacing the mobile homes may constitute a "change," but such change does not equate with an "addition." Insofar as the Board relied on this interpretation of the law, the Court finds that such reliance was plainly wrong and that such interpretation was an erroneous interpretation of the law, and the matter is remanded to the BZA for further consideration in accordance with the applicable laws.

The Powells additionally cite the portion of Virginia Code § 15.2-2307 which states that a use "may be continued only so long as . . . the buildings or structures are maintained in their structural condition." The key distinction between this part of the Code section cited by the Powells and the part of the same Code section hereinabove cited, which specifically discusses mobile homes is that, with regard to the provision cited by the Powells, the Code states that "[a] zoning ordinance may provide" whereas, in contrast, the provision cited by petitioner dealing specifically with mobile homes begins with the language, "[n]othing in this section *shall* . . . ."

The provision cited by the Powells sets the foundation for the sorts of regulations a zoning ordinance *may* provide for. The provision of Virginia Code § 15.2-2307 dealing specifically with mobile homes as hereinabove cited, is mandatory and must be followed. Accordingly, because the Zoning Code does not contain any language requiring that "buildings or structures [be] maintained in their structural condition," such requirements are not applicable to this proceeding. Va. Code § 15.2-2307. *See generally* Zoning Code (making no reference to such requirements). To the extent the BZA's decision is based upon this assertion, the BZA decision is reversed, and the matter is remanded to the BZA for the consideration of further evidence on this issue in conformance with applicable law.

## 1. *Whether the Nonconforming Structures or Uses Were Enlarged, Expanded, Moved, or Destroyed*

The Powells also refer to the language in Virginia Code § 15.2-2307, which says that "a zoning ordinance may provide that no nonconforming use may be expanded or that no nonconforming building or structure may be moved on the same lot or to any other lot which is not properly zoned to permit such nonconforming use." Va. Code § 15.2-2307. (Powell Memo., 11-13 (citing in accord Town Ordinance § 4.16-2).)

The Town Attorney made a similar argument at the April 9, 2013, BZA meeting, but cited Code § 15.1-492, stating that it "was not repealed." It is unclear whether the Town Attorney was saying that this Code section was not repealed at the time of *Knowlton v. Browning-Ferris Industries of Va., Inc.*, a case he was discussing, or whether he was plainly claiming that this Code section was not repealed. However, Virginia Code § 15.1-492 was repealed in 1997 and replaced with Code § 15.2-2307, which has been discussed throughout this memorandum.

They then refer to the changes that the Heath plan called for, "moving the units and expanding the size of the units, providing new access driveways and perhaps new utility hook-ups," and argue that the BZA correctly considered these changes to be "expansions." (Powell Memo., 11.) This issue was not discussed at the BZA meeting, and petitioner claims there is no evidence of such plan in the record. (Pet. Reply to Powell Memo., 8-9.) However, in the June 25, 2012, Planning Commission Meeting Minutes, Mr. Heath states that "he will pave the area with a driveway for each mobile home."

With regard to the access driveways and utility hookups, specifically, these additions could be argued to constitute an expansion of the nonconforming use. Zoning Code § 4.16-4 refers to "structures and premises in combination" and appears to be the more appropriate statute given that we are dealing with the nonconforming use of land as a mobile park home, which contains nonconforming structures, the mobile homes. However, this provision is silent as to the expansion within the property that has been declared a "nonconforming use." *See* Zoning Code § 4.16-4; *cf.* Zoning Code § 4.16-3 (discussing "[n]onconforming uses of land" and permitting such use to be enlarged, increased, or extended only so long as it does not "occupy a greater area of land than was occupied at the effective date of adoption . . . of this ordinance").

The Town Attorney stated that, after reviewing case law regarding the structural alteration of nonconforming buildings, "[petitioner] did not enlarge the structures that were there, they destroyed the structures that were there or moved them." (Meeting Minutes, 236-37 (April 9, 2013).) All evidence in the record indicates the mobile homes were replaced, as is discussed hereinafter. The Town Attorney goes on to say that the mobile homes were being replaced with "new buildings that are not

being constructed but are being rolled in and placed there," and says that to interpret otherwise would allow a property owner to build additional structures in support of nonconforming use. (*Id.*) The Court finds that to recognize that the mobile homes were replaced, does not set precedence for allowing additions to a nonconforming use, by way of logical deduction. Accordingly, to the extent the Board relied upon such advice, the Board's decision is hereby reversed as it is based on erroneous principles of law, and the issue is hereby remanded to the Board for further consideration utilizing applicable legal principles.

### 2. *Whether the Mobile Homes Were Replaced and Whether Such Replacement Affected Their Status as Nonconforming Structures*

The Powells argue that petitioner is not entitled to the mobile home exception because the petitioner is not "replacing" the mobile homes, but rather relocating them. (Powell Memo., 13.) Their rationale is that the new units are larger and "they will necessarily occupy different space than was occupied by the original units." (*Id.*) They cite the Supreme Court of Virginia decision in *The Lamar Co., L.L.C. v. Board of Zoning Appeals,* 270 Va. 540, 620 S.E.2d 753 (2005), as support for this argument. In *Lamar,* the Court upheld the zoning administrator's definition of the word "replacement" as "meaning that new billboards must stand in footprint of old billboards." *Id.* at 548. In that case, petitioner wanted to replace the billboards with new ones that would be placed ten yards away from the original ones. *Id.* at 542. The term "replace" was not defined in the city zoning code, but the code required undefined words in zoning ordinance[s] to be defined according to *Webster's Third New International Dictionary* and the dictionary's definition was consistent with the Board's definition. *Id.* at 543. The city also emphasized its use of the term "replace" as distinct from the term "relocate." *Id.* at 548-49.

The Court finds this argument to be unpersuasive. Petitioner is not seeking to "relocate" the mobile homes under the definition of the term "relocate" in *Lamar* because he is placing the new mobile homes back "in almost the same spot as the existing homes, with some movement to accommodate the Town's request for setbacks." (Pet. Reply to Powell Memo., 10.) Although what constitutes "some" movement is not specified, it stands to reason that it would be unreasonable for the Board to expect petitioner to place the new mobile homes on the same footprint as the original mobile homes, while also asking that he accommodate the Town's request for setbacks. As petitioner's counsel further explained at the BZA Meeting, some of the footprints of the existing mobile homes were within one to two feet of the property line. (Meeting Minutes, 217 (March 26, 2013).) Thus, "[petitioner] agreed when swapping them out, I guess for aesthetic purposes or neighbor purposes or for the Town's purposes, they would move them out from the footprints." (*Id.*)

Additionally, the fact that these mobile homes take up more space than the original mobile homes was not acknowledged as the reasoning for deviating from the original footprints; the record reflects that it was done to accommodate the Town's directives as to setback requirements. It appears to the Court that taking up more space is not the equivalent of relocating to a new spot ten yards away. *See The Lamar Co., L.L.C.,* 270 Va. 540, 620 S.E.2d 753; see also the discussion herein regarding the size of the "replacement mobile homes" being comparable pursuant to Virginia Code § 15.2-2307, which does not appear to have been discussed or considered by the BZA. Ultimately, there is no evidence to support the position that petitioner has relocated, rather than replaced, the mobile homes. Accordingly, the Court finds that petitioner is protected by the "mobile home replacement" section. (*Contra* Powell Memo., 13.)

## Conclusion

From the record herein, the Board of Zoning Appeals relied heavily on statements made by attendant town members opposing the project at the meetings as well as misstatements and missapplications of the law. Additionally, it appears that they were not advised as to certain relevant issues with regard to the statutes and case law; many statements appear to have been taken at face value without any supporting evidence or consideration of a legal basis. Furthermore, the Meeting Minutes were filled with discussions of public policy concerns and the intent behind the Zoning Code provisions. The intent behind the Zoning Code provisions may be appropriate to take into consideration, but the record here reveals that the Board placed greater weight on these intentions than on the legal issues resulting from the material facts and evidence before the Board. The record shows the Board to have misinterpreted or misapplied the law and relied on unsubstantiated facts in an effort to end a nonconforming use, regardless of whether it was properly and legally determined to be a continuing, valid, and legal nonconforming use.

Given this status, the record as a whole, while replete with conclusory statements, is rather sparse with regard to consideration of certain relevant legal issues. There should be a consideration of certain material facts in conjunction with applicable law in order to properly determine whether the subject property should continue to exist as a nonconforming use. As this Court's role is not to make this determination, the Court finds that the evidence is insufficient to support the Board's decision and its application and interpretation of the law is at times erroneous or plainly wrong and based upon erroneous applications of law. Accordingly, the Court reverses the BZA's decision and remands this case to the BZA for further proceedings to insure compliance with the requirements of the Zoning laws, to ensure that there be an appropriate determination of whether there exists a vested right by the property owner with respect to the subject property, and to

ensure due process, notice of the issues, and opportunity to be heard by all parties involved as to the legal issues and material facts.

The Court acknowledges the argument of the BZA that the burden was on the landowner regarding the presentation of evidence in support of his petition, but such position is not consistent with the case of *Board of Supervisors v. Board of Zoning Appeals,* 271 Va. 336, 626 S.E.2d 374 (2006), as cited herein, which finds that the party seeking to challenge the nonconforming use of the property as an illegal use carries "'the initial burden of producing evidence to show . . . that the use of the land is not a permitted use.' The burden then shifts to the landowner to establish that the use is a lawful nonconforming use." *Id.* at 348 (internal citation omitted).

Justice and equity for all interested parties require such remand in order that the defects in the record may be addressed and supplied. The BZA shall take such action as it deems appropriate to assure that, in the event of any further appeal, the record is sufficiently complete to allow appropriate judicial review of its decision. Although no written findings or conclusions must necessarily be made, the record submitted to the Circuit Court in all appeals from the Board of Zoning Appeals must contain sufficient findings or conclusions supporting the Board's decision on the arguments presented to it to allow the Circuit Court to "properly adjudicate, and [the Supreme Court to] properly review the issues on appeal." *Packer v. Hornsby,* 221 Va. 117, 121, 267 S.E.2d 140, 142 (1980). As the record from the BZA does not contain the necessary findings or conclusions, this Court must reverse the BZA decision and remand the case to the BZA for further proceedings in accordance with the statutory requirements and applicable law.